**COLUMBIA CASUALTY CO. v. TIBMA.**

No. 4842.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1933.

Glenn D. Peters, of Hammond, Ind., and Dudley M. Shively and Walter R. Arnold, both of South Bend, Ind., for appellant.

Andrew J. Hickey and John B. Dilworth, both of La Porte, Ind., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Appellant's contention is based on its assumption that there is no substantial evidence in the record to support any one or more of appellee's affirmative answers, and that by the uncontradicted evidence it was entitled to a verdict and judgment for $12,725.87 and interest on $11,763.07 of that amount from the time it was expended.

The verdict of the jury determined in appellant's favor the issues raised by the second, third, and sixth paragraphs of the answer, and with those we are not concerned. It may be conceded that the charge of fraud as contained in the fifth paragraph of answer is unsupported by any evidence, hence the sole question for our consideration is whether there is substantial evidence in the record to support the allegations of the fourth paragraph of answer. A determination of this question necessitates a statement of the facts.

On April 21, 1925, the Highway Improvement Company, hereinafter referred to as principal contractor, entered into a contract with the State Highway Commission of Indiana for the construction of a hard-surface road in St. Joseph County, Indiana, which was to be completed by November 15, 1925. On May 16, 1925 the principal contractor entered into a subcontract with one L. V. Barcus, hereinafter referred to as Barcus, whereby it was agreed that Barcus would do the grading, ditching, and shouldering of the road at the rate of forty-five cents per cubic yard for the yardage removed. It was further agreed that Barcus should furnish to the principal contractor a surety bond in the sum of $20,000, guaranteeing the completion of the work in accordance with the contract entered into by the principal contractor and the Highway Commission. That bond was given by Barcus and was signed by appellant as surety. It provided that appellant should indemnify the principal contractor against any loss or damage by reason of failure of Barcus to perform his subcontract, and, in the event that Barcus should fail to comply with the contract to such an extent that it should be forfeited, appellant should have the right to assume and perform the contract or sublet it, and to be subrogated to the rights of Barcus against the principal contractor. As a condition to the execution of that bond, however, appellant demanded an indemnitor. Thereupon on June 18, 1925, appellee executed to appellant the indemnity agreement now in suit, which, so far as material here, obligated appellee to indemnify appellant against all loss and liability by reason of appellant's execution of the bond to the principal contractor on behalf of the subcontractor.

Barcus entered upon the grading work, and by October 1, 1925 had completed 39,060 yards of the 45,934 yards covered by the principal contract, and of the 9.541 miles of shoulder work contemplated therein he had completed all but about four miles. The total allowance for shoulder work under the principal contract was $3,022.14, and under the eighty per cent. clause of the subcontract there had been paid to Barcus on his contract, or to others upon his request, the sum of $13,884.54.

Some time prior to October 1, 1925, the principal contractor notified appellant by letter that Barcus' manner of work was not satisfactory. On October 1, 1925, appellant wrote appellee that Barcus was not doing his work satisfactorily and that there might be an obligation on the bond; that they expected him to save them harmless and to get on the job and see that the work was taken care of. Shortly thereafter appellant's agents inspected the work for the first time and reported to appellee's attorney that Barcus was getting along as well as could be expected; that he had men and equipment on the job and could carry on; that they would watch the situation; and that they were sure that the contract would work itself out without liability to any one. Appellee's attorney at that time informed appellant's agents that Barcus was not well qualified to handle the job, and that it would be necessary to watch him.

From that time on the negotiations were carried on between the parties by appellant's agents and appellee's attorneys and nothing further was done by appellant until the latter part of April, 1926. On April 22, 1926, appellee's attorney ascertained that the principal contractor had done a considerable amount of grading work during the winter and had charged it to Barcus at exorbitant prices, and was threatening to take over the entire subcontract. These facts were immediately communicated by said attorney to appellant at its home office in New York

by a letter, in which the following statements were made:

"We further found by perusal of the correspondence of the Highways Improvement Company, that your Chicago office from time to time since last fall, has been informed in detail of this situation, and under date of January 6th was sent a statement showing the exact status of the matter. None of this information was passed to Mr. Tibma, and apparently your company has taken no steps whatever to minimize liability on your bond.

"We are at a loss to understand the apparent lack of interest of your Chicago office. If it is your position that you may rely on Tibma, guarantor, and take no action whatever on this job, be informed now that Tibma will deny any responsibility.

"Our investigation discloses that Barcus has little if any equipment left, he has no money to employ workmen and has exhausted his credit. The writer had quite a talk with the State Highway engineer on the job yesterday and he appears inclined to be very reasonable in the matter of this grade.

"The time has come to put some responsible man on this job and finish it, and it would seem that that responsibility in the first instance rests on the bonding company. * * * We suggest that you have some responsible representative on the ground at once and if you show any spirit of co-operation we feel sure that Mr. Tibma will be glad to work with you."

Shortly thereafter appellant insisted that appellee take over and complete the contract. This the latter refused to do, and he gave as his reason therefor that he was not a party to the subcontract or the bond, and had no rights on the job. He refused to admit or assume any liability, but insisted that appellant do everything possible to prevent further loss, and agreed to co-operate to that end. Thereafter appellant entered into a contract with a local contractor to take over and complete the work on a cost plus basis. The signing of that contract by appellant was delayed several days by an effort of appellant to secure an admission of liability on the part of appellee. The question of appellee's liability, however, was left open, and both parties joined in the effort to secure completion of the work as cheaply as possible under the then existing conditions. Subsequently appellant paid the local contractor $11,763.07. A very large part of the work done by him consisted in rebuilding berms and shoulders which had washed out during the winter and in cleaning out ditches which had filled in. About seven miles of shoulder work had to be done over.

After the work was completed and accepted, appellant demanded payment from appellee of the full amount of its cost. This was refused on the ground that no settlement had been made with the principal contractor for the work done by Barcus, and without such settlement the amount of liability, if any, could not be determined. Appellant thereupon demanded that appellee institute and prosecute a suit for that purpose, which demand was refused on the ground that his status as indemnitor gave him no standing in court for that purpose.

Appellant on May 14, 1927, instituted an action in St. Joseph County, Indiana, Superior Court No. 2 against the principal contractor, the surety on its bond, the administratrix of Barcus who was then dead, and appellee. In that action it demanded judgment against the principal contractor and the surety on its bond, for $13,350 for the balance due on work done by Barcus for which the principal contractor had not accounted, and against appellee for the full amount of its expenditures in completing the work.

Appellee pleaded in abatement that he was not a privy to any of his codefendants, and that there was a misjoinder of causes of action; that he was not a resident of St. Joseph County, and was entitled to be sued, if at all, in the county of his residence, and then only after the loss incurred by appellant had been definitely fixed and proper recovery had against the principal contractor. That plea was sustained, and the action abated as to appellee. Certain materialmen intervened, and issues were joined as to all parties. On March 16, 1929, the instant action was filed. Appellee pleaded in abatement that the action was prematurely brought, in that the issue presented could not be determined until an accounting had been completed in the suit pending in the state court. Thereupon the cause in the state court was submitted to the court without a jury on July 8, 1931, which resulted in a finding and judgment on that day that the plaintiff take nothing.

On October 9, 1931, the case in the state court was reopened and a supplemental finding and order was made to the effect that the principal contractor was indebted to appellant as subrogee of Barcus in the sum of $3,692.46, but that the receiver for the principal contractor, and its surety were entitled to recover from Barcus the sum of $5,500 for money advanced.

On October 12, 1931, appellant supplemented his complaint in the instant case by setting up the judgment of the state court and praying for attorneys' fees incurred in the prosecution of that case in the sum of $1,050. Thereupon there was a finding against appellee on his plea of abatement, and issues were joined in the instant case as hereinbefore stated. The sum of $12,725.87, for which appellant claimed it was entitled to judgment, included an attorney's fee of $962.80 for prosecuting the action in the state court. That fee had not been paid, and by agreement of appellant and its attorney payment thereof awaited the determination of the instant action.

In the trial of this cause appellant's witness testified that the weather was unfit for work on the road from about November 1, 1925, to April 22, 1926, but, on the other hand, it is uncontroverted that during some part of that time the principal contractor did considerable work on the road which Barcus was obligated to do.

Under the issue joined by the complaint and the fourth paragraph of answer, the matter was properly submitted to the jury. Proof to support a verdict for damages need not be in exact figures of dollars and cents. It is sufficient if it enables the jury to make a fair and reasonable finding in relation thereto, and we think the jury in this case was thus enabled by the facts hereinbefore set forth. Anvil Mining Co. v. Humble, 153 U. S. 540, 14 S. Ct. 876, 38 L. Ed. 814; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 47 S. Ct. 400, 71 L. Ed. 684. It is not denied that the law imposed upon appellant the duty, when it learned of default or threatened default under its bond, to exercise diligence to keep the loss as low as possible, and that it could not stand idly by and permit loss to accrue and mount and then collect in full from the indemnitor. Wicker v. Hoppock, 6 Wall. (73 U. S.) 94, 18 L. Ed. 752; Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117; Chesapeake & Ohio R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367; Weed v. Lyons Petroleum Co. (D. C.) 294 F. 725. See also 8 R. C. L. 442. The fact that the principal contractor did a part of Barcus' work after he quit in October, 1925, and before the latter part of April, 1926, was a direct contradiction of appellant's evidence that the weather prevented work during that time. The jury quite evidently did not believe appellant's evidence in that respect, and its determination of that issue was indeed a strong circumstance in support of the fourth paragraph of answer. It was more than five years from the time appellant completed and paid for the work until it was able to ascertain that there was nothing due it from the principal contractor. From the facts before it, the jury might well have considered that such delay was negligence and that prompter action might have secured a different result in the way of minimizing damages. It is conceded by appellant that the mere charge for attorneys' services, or the presentation of a bill therefor would not conclusively show the reasonableness of the charge. Under the circumstances, the jury might well have concluded that the charge for such services was quite exorbitant, and that so much of the charge as relates to appellant's unsuccessful efforts to sue appellee in the state court was entirely unwarranted, and should not be charged to appellee.

All of these facts bore directly on the issue raised by the fourth paragraph of answer, and the jury's verdict with respect thereto is conclusive. See Fairmount Glass Works v. Cub Fork Coal Co., 287 U. S. 474, 53 S. Ct. 252, 77 L. Ed. ——.

Judgment affirmed.