## DYAL v. WIMBISH.

### No. 10023.

Circuit Court of Appeals, Fifth Circuit.

Dec. 30, 1941.

J. P. Highsmith and Jap H. Highsmith, both of Baxley, Ga., for appellant.

Larry E. Pedrick and E. Kontz Bennett, both of Waycross, Ga., for appellee.

Before FOSTER, HOLMES, and Mc-CORD, Circuit Judges.

FOSTER, Circuit Judge.

Appellee, E. Y. Wimbish brought two suits against J. E. Dyal, appellant. Designating the suits by the numbers they took in the district court, No. 20 was to recover damages for assault and battery and No. 21 was for damages for breach of contract to rent a tobacco warehouse in the town of Baxley, Ga. The cases were tried together by the same jury but were not consolidated and separate verdicts were rendered, $2,000 in No. 20 and $3,000 in No. 21, on which judgments were entered. By stipulation both cases are brought up on one record.

The record shows the following facts. On August 17, 1938, Wimbish and Dyal

entered into a contract, the material part of which is as follows:

"The said lessee, for and in consideration of the sum of One Dollar ($1.00) and other valuable consideration in hand paid, hereby lease the Tobacco Warehouse known as the Planters Warehouse located in the city of Baxley, Appling County, Georgia, for the seasons of 1939, 1940 and 1941. The said lessee agrees further to pay J. E. Dyal as rent therefor the sum of $1.50 per thousand pounds of all first hand sales of tobacco sold in said warehouse; by first hand sales being meant sales made for farmers as well as tobacco bought on other markets and resold here."

The contract is identical with leases between the parties for the previous four years. Dyal owned three warehouses in Baxley but declined to rent more than one of them to Wimbish. After the execution of the agreement of 1938, Wimbish learned that another tobacco warehouse was to be built in Baxley and made arrangements to lease it. Dyal hearing of this considered it tantamount to a breach of his contract with Wimbish and notified him personally and through his attorneys that he would cancel the lease unless Wimbish agreed to pay the rental at $1.50 per 1,000 pounds on all tobacco sold at either warehouse operated by Wimbish. Wimbish stood on his contract and Dyal notified him the lease was cancelled. The tobacco season usually lasts about four weeks. After that the warehouse is returned to the owner and may be used for the storing of other commodities. The season opened at Baxley on Tuesday, July 25, 1939 and ended on August 25th. Dyal declined to surrender the keys to the warehouse but Wimbish went there early on the morning of July 19th with Stanley, his associate, who had a one-third interest in the venture, and several of his employees. The parties gained admission to the warehouse through a window after Wimbish removed a nail by which it was fastened. Wimbish then opened the front doors. At that time a truck load of tobacco had arrived. Shortly thereafter Dyal came into the warehouse carrying a Winchester rifle, started cursing and ordered everyone out, threatening to kill them if they did not leave. They ran for their lives, as one of the witnesses put it, all except Wimbish, who was near the front door. He saw Dyal coming towards him, not running but striding, and he endeavored to get out

of the warehouse. Up to this point there is little or no conflict in the testimony.

There is evidence tending to show Wimbish was struck over the head with the rifle by Dyal, rendered unconscious and seriously injured. Dyal admitted an assault on Wimbish but testified Wimbish had threatened him with a pistol and he struck him only with his fist to defend himself. There was cumulative evidence in support of both theories.

■ As to the assault, appellant contends that Wimbish was a trespasser in entering the warehouse; that he was not entitled to enter, conceding the lease to be valid, until the season opened and that he had the right to use force in ejecting Wimbish. On this case the District Court charged that the contract was valid but Wimbish had no right to enter the warehouse by force and Dyal had the right to use reasonable force to eject him but no more than that. The charge was correct and the case was properly left to the jury on conflicting evidence.

Appellant contends as to the suit on the contract that the contract was unenforceable because lacking both in consideration and mutuality; that conceding the contract to be valid and breached, the measure of damages was the excess in value of the term over and above the amount agreed to be paid as rent and, if no excess was shown, nominal damages only were recoverable; that the lessee is not entitled to recover profits that might have been made by conducting the business from the demised premises, such damages being too remote, speculative and impossible of ascertainment.

■ Fairly construed the lease provided for a consideration of $1, which would be enough to make it a valid contract at common law. But that is immaterial as it is certain the parties contemplated that Wimbish in good faith would sell tobacco in the Planters Warehouse and pay Dyal $1.50 per thousand pounds thereon as rent for the term. Had he sold tobacco and declined to pay the rent, undoubtedly Dyal would have had a cause of action against him to recover it. It was therefore not invalid either for want of consideration or want of mutuality. Palmer Brick Co. v. Woodward, 138 Ga. 289, 75 S.E. 480.

It is certain the contract was breached by Dyal. Over objection, evidence was

introduced which tended to show the profits Wimbish had made in operating the warehouse for the previous four years. Appellant assigns error to this.

On the question of the recovery of damages for breach of contract based on the recovery of profits, the law was exhaustively reviewed in the leading case of Howard v. Stillwell & Bierce Mfg. Co., 139 U.S. 199, 11 S.Ct. 500, 35 L.Ed. 147, and the rule stated substantially as follows. As a general rule anticipated profits prevented by the breach are not recoverable in the way of damages as usually they are too dependent upon uncertain and changing contingencies and are not as a matter of course the direct and immediate result of the non-fulfillment of the contract. But it is equally well settled that profits which would have been realized had the contract been performed may be recovered as damages where the profits are not open to the objection of uncertainty or remoteness or where under the expressed or implied terms of the contract itself or the special situations under which it was made, it may be reasonably assumed that they were within the intent and mutual understanding of both parties at the time it was entered into.

In this case the damages flow directly from the breach of the contract. Considering the previous relations of the parties it would be unreasonable to say that Dyal did not contemplate that Wimbish would realize profits from the leasing of the warehouse. In no sense could it be said that Wimbish's claim for damages is based on conditions incidental to but unconnected with the breach of the contract of lease. In the following cases it was held that damages based on loss of future profits need not be proved with absolute certainty and that the previous course of business between the parties and the profits derived therefrom may be looked to as a fair basis for determining what profits would have been earned had the contract not been breached. Pennsylvania Steel Co. v. New York City Ry. Co., 2 Cir., 198 F. 721; Eastman Kodak Co. v. Southern Photo Material Co., 5 Cir., 295 F. 98; Rynveld v. Dupuis, 5 Cir., 39 F.2d 399; Columbia Cas. Co. v. Tibma, 7 Cir., 63 F.2d 538. The law of Georgia is in conformity with these rules. Levy, Brother & Co., Inc., v. Allen, 53 Ga.App. 246, 185 S.E. 369, and authorities cited therein.

There is no doubt the evidence tending to show the profits made by Wimbish from the leasing of the Planters Warehouse in previous years was properly admitted. The District Court left it to the jury to find the facts under a charge that clearly and correctly stated the law.

Other points raised by appellant require no discussion. The record presents no reversible error. In each case the judgment is affirmed.