[Civ. No. 21715. First Dist., Div. Three. Apr. 19, 1965.]

MASSACHUSETTS BONDING AND INSURANCE COMPANY, Plaintiff and Appellant, v. WALTER L. OSBORNE et al., Defendants and Respondents.

Joseph Jedeikin for Plaintiff and Appellant.

G. H. Van Harvey for Defendants and Respondents.

BRAY, J.*—Plaintiff appeals from judgment, without a jury, in favor of defendants Walter L. Osborne and Doris H. Osborne, in an action for reimbursement against indemnitors on materialmen's and performance bonds.

### Questions Presented

I. Was defendant Doris H. Osborne liable as an indemnitor?

II. Did plaintiff breach its duty to mitigate damages and not to increase indemnitors' obligations?

### Record

Plaintiff brought this action against Walter L. Osborne, Doris H. Osborne, John S. Bowie and Virginia Lee Bowie, individually, but not against the Osborne-Bowie partnership. The relief sought was reimbursement from all defendants who,

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

as will hereinafter appear, were indemnitors on certain bonds, for moneys paid out by plaintiff under its obligation on said bonds for labor and materials. Plaintiff and defendants John Bowie and Virginia Lee Bowie negotiated a settlement and entered into a "Covenant Not To Execute." Defendants Bowie and Bowie then defaulted. The case proceeded against the other two defendants, Osborne and Osborne. The court found, in effect, that the bonds upon which liability was based were not issued at the special request of Doris, and hence she could not be held liable on the bonds. Also that plaintiff was under a duty to mitigate damages for the benefit of defendant indemnitors, failed to do so and that by the beforementioned "Covenant Not To Execute," the contingent liability of defendants Osborne and Osborne as indemnitors was increased, and hence that thereby they were released from liability on the agreement of indemnity. Judgment was entered accordingly.

### The Evidence

There is no conflict in the evidence. The conflict arises in the interpretation of the evidence.

Defendants Walter L. Osborne and John S. Bowie were copartners in the business of general contracting in Del Norte County, California, under the firm name of Osborne & Bowie Engineering Contractors, the partnership having been organized in 1956. Defendants Doris H. Osborne, wife of Walter L. Osborne, and Virginia Lee Bowie, wife of John S. Bowie,[1] were not members of the partnership.

Having occasion from time to time to require bonds in connection with its contracting business, the partnership arranged with plaintiff for the execution of such bonds as the partnership might require. For the purpose of protecting plaintiff from liability upon such bonds, a document in the nature of a blanket agreement of indemnity was executed on November 30, 1956, by the plaintiff as indemnitee and all of the individual defendants as indemnitors. When the indemnity agreement was signed the partners had no particular job or work in mind; they knew that there were some good jobs coming up and they wanted to be prepared to bid on them. In regard to application for any specific bond, the indemnity agreement stated: "*WHEREAS, At the special instance and request of the Principal (and the Indemnitors, if any)*, and upon the express understanding that this Agreement of Indemnity

---

[1] For clarity, defendants will be referred to by their respective first names.

should be given, the MASSACHUSETTS BONDING AND INSURANCE COMPANY (hereinafter called the Surety) has executed or procured to be executed, *and may from time to time hereafter execute* or procure to be executed . . . on behalf of the Principal'' labor and material and performance bonds. (Italics added.) It was further agreed ''SEVENTH: That the Surety may regard a letter, telegram or written application from the Principal, or if the Principal be a corporation, then a letter, telegram, or written application from the President, Vice President, Secretary, Treasurer, any other officer or the General Manager, and addressed to the Surety, as sufficient and ample authority for the Surety to execute or procure 'Such Bonds' specified in said letter, telegram, or written application, and 'Such Bonds' executed or procured upon such authority shall be embraced in this Agreement of Indemnity.''[2]

On May 2, 1957, defendants Walter and John, as partners, entered into a written contract with the State of California, by its Department of Public Works, for construction work on State Highway in Del Norte County, for the total sum of $244,089. Also on May 2, 1957, upon the application of the partnership, plaintiff executed and delivered to State of California its bond, in the amount of $122,044.50, conditioned for the faithful performance of the foregoing contract, and its bond in the amount of $122,044.50, conditioned for the payment of materials, provisions or other supplies, implements and machinery used in the performance of the work, and for any work or labor thereon. The application for the bond was made under the name of Osborne and Bowie, doing business as Osborne & Bowie Engineering Contractors, and was signed by only Walter, as copartner. Defendant Doris did not sign the application for said bond, and was not asked to join in said application.

The work was completed about December 1, 1957. At the conclusion of the work the partners were not financially able to meet their payments to those who furnished materials or performed labor or other services, and claims were filed with the State of California. Plaintiff paid $56,853.41, the obligation of the partnership for both labor and materials that had accrued on the job.

About December 10, 1957, following completion of the work, the two partners reported to plaintiff at its office in San Francisco the nature and extent of their difficulty. On that

---

[2]''Such Bonds'' are defined in the agreement as the faithful performance, materialmen's and laborers' bonds referred to therein.

day they made a general assignment to plaintiff of everything they owned, including all accounts receivable, all materials and stock, all notes receivable, all equipment, all real estate, and any and all other assets owned by them as individuals and as partners. Notice of said assignment and of intention to assign was given in the manner required by law. About December 20, 1957, plaintiff caused the property of the partnership and of the individual defendants to be attached. There were recorded in the office of the county recorder notices of attachment of the real property of defendant Doris, the real property of defendants John and Virginia, and the real property standing in the name of Osborne & Bowie Engineering Contractors.

The partnership owned a parcel of land on U. S. Highway 101 about one mile north of Crescent City, California, containing 5 acres, with a highway frontage of 250 feet. This property had been acquired by the partnership on August 22, 1956, for the total purchase price of $6,000, with a down payment of $2,000 and the balance secured by a deed of trust for $4,000. At a meeting with plaintiff's claims manager, defendant Walter gave him a written offer of $15,000 for the property, which Walter had received. There was testimony that the property had a fair market value of $12,000 to $15,000.

The 5-acre property passed to plaintiff under the general assignment. It was later conveyed to plaintiff by deed dated May 31, 1958, subject to the deed of trust. This deed was not recorded. On November 18, 1958, there was due for interest, taxes and principal the sum of $3,069.79. On that day the property was sold at trustee's sale to the beneficiaries of said deed of trust for the sum of $3,190.50, including $120.71 costs of sale. The property was not reconveyed by plaintiff to the partnership or to the individual partners. The court found that at the time of the trustee's sale, the property had a reasonable market value of $12,000, so that had appellant bid it in at the foreclosure sale and paid off the mortgage of $2,890.67, an equity of $9,109.33 would have been preserved.

Plaintiff and John entered into an agreement to settle the action as between them. Under this agreement plaintiff received:[3] (1) an assignment to it from one Parker of a contract of sale of certain real property in Phoenix, Arizona;

---

[3]The agreement recites delivery to plaintiff of a deed from the partnership of a certain 5-acre tract in Del Norte County. This deed had been given plaintiff by Walter and was not a part of the settlement between plaintiff and the Bowies.

(2) release from Crescent City of plaintiff from street work liability; (3) evidence of releases of certain tax liens. John received from plaintiff: (1) release of attachment on the accounts receivable of Woodrow Dixon and Beresa, Inc.; (2) letter from plaintiff that in the event of judgment against the Osborne-Bowie partnership, such judgment would not be executed as against John, an individual; (3) release of attachment on the home of John and Virginia. Additionally, upon John's satisfying claims of unsecured debtors of the partnership in the sum of $10,315.52, plaintiff returned to him a note of John and Virginia to plaintiff in the sum of $10,000.

## I. DEFENDANT DORIS LIABLE AS INDEMNITOR

 It is conceded that Doris did not join in the application for the bonds in question here. Plaintiff takes the position that under the indemnity contract it was not necessary for her to do so. The court interpreted the contract as requiring her to request their issuance. While there was some extrinsic evidence introduced to aid in the contract's interpretation, it is of so little value that it is obvious that the trial court determined the meaning of the contract from its terms unaided by this extrinsic evidence. It consisted of Doris' testimony, which was confused and indicated only that she knew little of and took little interest in, her husband's business. The court characterized her testimony thusly: ''The testimony that she gave would indicate that she knew something about—something, but not very much about anything.''

 Ordinarily, when extrinsic evidence is introduced to aid in the interpretation of a written document, the question of its interpretation is one for the trier of fact and the reviewing court may not substitute its views if the trial court's interpretation is reasonable. On the other hand, in the absence of such evidence, construction of the terms of a contract is a matter of law for the court and the reviewing court is free to exercise its judgment independent of the conclusion of the trial court. (See 12 Cal.Jur.2d, Contracts, § 119, p. 324.)

 As it appears that the interpretation of this contract is one of law (and was so considered by the trial court), it is the duty of this court to interpret it independently of the trial court's interpretation. We do not agree with the interpretation of the trial court.

The two clauses pertinent to the subject are the first paragraph and the seventh hereinbefore set forth. The first states, in pertinent part: ''WHEREAS, At the special instance and

request of the Principal (*and the Indemnitors* . . .) the Surety . . . may from time to time hereafter execute . . . on behalf of the Principal'' such bonds. (Italics added.)

The language seems clear that at the special instance and request of the principal and the indemnitors the surety has agreed to execute bonds for the purposes expressed in the agreement. The form of agreement used contemplates that bonds have already been executed and that other bonds may from time to time thereafter be executed. (In this case, none had been executed.) To read the agreement to require that each time a bond is executed the indemnitors must specifically request such execution is reading something into the agreement that is not there. Nor would such requirement be reasonable. Particularly is this so when paragraph seventh is read in connection with the above paragraph. The seventh paragraph states, in effect, that the written application of the principal or any officer of the principal for the execution of additional bonds is ample authority for the surety to issue such bonds and when issued the bonds are ''embraced in this Agreement of Indemnity.'' To construe the agreement as providing that bonds may only be issued at the special instance and request of the indemnitors and not upon the application of the principal alone, would make this paragraph meaningless.

Again, preceding the first paragraph hereinbefore quoted, appears the following: ''WHEREAS, the Principal, in the performance of contracts and the fulfillment of obligations generally may desire, or be required to give or procure certain bonds, undertakings and instruments of guarantee, and to renew or continue the same from time to time; or new bonds, undertakings and instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof; all of which are hereinafter collectively called 'Such Bonds.' ''

There is no uncertainty in the terms of the agreement. Taking the indemnity agreement by its four corners, it clearly appears that the partnership was to obtain from plaintiff the bonds necessary for their work, and to renew or continue them; that the indemnitors had specially requested plaintiff to issue such bonds upon the understanding that they would indemnify plaintiff for any loss because of the issuance of such bonds; and that the bonds would be issued or renewed upon the application of the partners or their authorized agents and

without any requirement that the indemnitors join in such application.

In *American Surety Co. of New York* v. *Egan* (6th Cir. 1932) 62 F.2d 223, the indemnity agreement which the court held did not require application by the indemnitors for the specific bonds issued under the agreement was not as positive in this respect as the agreement at bench. There, the indemnity clause provided: "Whereas, the undersigned (hereinafter called the indemnitor) has heretofore required, and *may hereafter require* suretyship upon certain obligations of suretyship on behalf of the undersigned, or of some other person or corporation, and has applied, and *may hereafter apply* to the American Surety Company of New York (hereinafter called the Surety) to execute such instruments, as Surety." (P. 224; italics added.) Then follow the clauses as to indemnification. The agreement was signed by both the construction company, the principal in the bonds to be executed, and by the individual indemnitors. The court stated: ". . . it is argued that appellees were not bound to indemnify the surety company as to any bonds except those which they personally requested, and, as the proofs show that none of them requested the bond for the athletic building, there should have been a directed verdict in their behalf. We cannot accept this construction. It seems plain to us that it was the purpose of the agreement to deal with the immediate and perhaps prospective needs of the only party whose business was expected to require bonds. It was known at that time that the construction company contemplated engaging in construction work, indeed its application for a guaranty of its bid on the Butterworth Hospital was the immediate cause of the execution of the agreement. No one thought any of the other signers would ever require a bond. Certainly there is nothing in the agreement to indicate that they were not to be bound except upon their separate requests, and, inasmuch as the agreement was executed for the benefit of the construction company, we think it is to be held that the making of an application by that company was sufficient to bind all the signers within the limits contemplated by the undertaking." (Pp. 224-225.)

In our case, no one expected that any of the indemnitors would ever require a bond. The agreement was executed for the benefit of the partners, and the making of the application was sufficient to bind the indemnitors in the event of the issuance of the bonds applied for. The agreement in the

instant case is stronger than that in the cited case, for the agreement here contained paragraph seventh which expressly provides that the application of the partnership is sufficient authority to the surety to issue bonds under the terms of the agreement. See *Employers' Liability Assur. Corp.* v. *Tebbs* (D.C.Wyo. 1956) 137 F.Supp. 869, 871, where the court said: "The rule that an indemnitor is held only by his express words of his promise does not entitle him to demand an unfair and strained interpretation in order that he may be released from the obligation he has assumed."

*National Surety Co.* v. *Wilcox* (1919) 42 Cal.App. 523 [183 P. 701], cited by defendants, is not in point. There the indemnity agreement stated: "That, whereas, Standard Lumber & Wrecking Company, Inc., W. W. Wilcox and Dan Johnston (hereinafter called applicant), may from time to time hereafter request the National Surety Company . . . to make and execute various and sundry bonds and undertakings . . ." (p. 525). Then follows the agreement of indemnification. The court held that Wilcox and Johnston were not liable where a bond was issued only at the request of the lumber company. The court pointed out that the agreement referred solely to bonds to be executed at the request of the "applicant" and that the agreement expressly stated that the applicant was the lumber company, Wilcox and Johnston. No such situation exists with reference to the agreement in our case.

There is no uncertainty between the paragraphs in the agreement.

## II. Plaintiff's Duty to the Indemnitors

The trial court found that plaintiff failed to mitigate damages for the benefit of the principal and the indemnitors, in that the real property transaction resulted in a loss of $9,109.33, the assignment of the accounts receivable to John resulted in a loss of $4,400, the return of the promissory note resulted in a loss of $10,000, "thus the principals and indemnitors were caused to have their contingent liability under the Indemnity Agreement increased by the sum of $23,509.33, not considering the value of the home of defendants John S. and Virginia Lee Bowie. The value of the home is not known but it could have been sufficient to pay off the entire obligation."[4]

---

[4]Plaintiff, citing *Ramsay v. Rodgers* (1923) 60 Cal.App. 781, 785 [214 P.2d 261], contends that the court erred in considering the question of

The court further found: "Plaintiff breached its duty to the indemnitors by returning the property of one of the principals that it had in hand. Once an asset of the principals came into the hands of the plaintiff company, it had to deal with the assets in good faith and use the same to mitigate damages. Just as the plaintiff was surety for the principals, the indemnitors were surety for the plaintiff. The action of plaintiff in returning assets, once in its hands or dealing with them in a manner detrimental to the interest of the indemnitors, constituted an alteration of the original obligation and discharged the indemnitors. XV. Defendants Walter L. Osborne and Doris H. Osborne, as indemnitors, have an equitable right over and against the principal to recover any loss that they may suffer due to the agreement of indemnity. That right was impaired by the 'Covenant Not To Execute.' Upon payment they would stand in the shoes of the plaintiff and the 'Covenant' which barred their remedy would discharge them."

### The Five-Acre Tract

As to the 5-acre tract which plaintiff permitted to be sold under foreclosure, plaintiff takes the position that the law does not place a burden on plaintiff to pay the $2,890.67 necessary to safeguard the equity in the property and thereby to avoid the foreclosure. Plaintiff contends that it acted in good faith in that it had received an appraisement to the effect that there was no equity in the property.

In *New Amsterdam Casualty Co.* v. *Frazier* (1927) 142 Wash. 230 [252 P. 703], the indemnitors on a faithful performance bond issued to one Tillman by the casualty company, conveyed to the surety, after the surety became liable for Tillman's default on a construction contract, two pieces of real property as security for one indemnitor's obligations to the surety. One was subject to a mortgage; as to the other, the indemnitors were purchasing it under instalment contract. The surety made no payments on the mortgage or on the contract, as a result of which the mortgage was foreclosed and the contract terminated. The court held that in the absence of an express agreement on the part of the surety to make the payments on the mortgage and the contract, there was no

---

mitigation of damages as such issue was not pleaded. However, although not pleaded, it was made an issue throughout the trial, without objection. Hence, the failure to plead it became immaterial. (*Benam* v. *Benam* (1960) 178 Cal.App.2d 837, 842 [3 Cal.Rptr. 410].) Moreover, as will hereinafter appear, the finding of failure to mitigate damages is not supported by the record.

obligation on the part of the surety to do so; that the surety was free to abandon the real property without impairing its rights under the indemnity contract.

In our case there does not appear to have been any agreement that plaintiff would assume or pay the mortgage on the 5-acre tract. Defendants concede that there was no obligation upon plaintiff to protect the tract from foreclosure. They contend, however, that plaintiff had the duty of returning the property to them and notifying them that it did not intend to buy in at the foreclosure sale. Defendants fail to cite any authority to support this contention. Moreover, it is conceded that defendants had received notice from the trustee of the intended foreclosure of the deed of trust. Whether they received notice of the date of sale does not appear. However, it does appear that defendants' attorney was present at the trustee's sale. As defendants were the trustors in the deed of trust and were aware of the fact that the trustees were going to foreclose, they had the duty of inquiring whether plaintiff would prevent the foreclosure or bid in the property at the sale, and if not, defendants then would have to act to save the property. We can find no theory upon which to support the court's finding that plaintiff's failure to protect the property against foreclosure constituted a failure to mitigate damages and released the indemnitors from their indemnity agreement.

### The $4,400 Accounts Receivable

Plaintiff released from attachment and later transferred to John partnership accounts receivable of $4,400 value which had been assigned to it and received in lieu thereof the Phoenix sales contract assigned to plaintiff by John's mother-in-law, upon which there was a balance of $5,000 payable $100 per month. Plaintiff contends that it was merely exchanging a nonliquid asset for a liquid one, and thereby in effect was mitigating damages in that the accounts would have to be pursued to be collected and might involve litigation. This would appear probable. Hence, it is difficult to believe that the indemnitors were harmed by this exchange. As this exchange did not affect the original obligation of the indemnitors, inasmuch as they were not injured by it, the exchange could not and did not act to release the indemnitors from their obligations under the agreement. In order for the indemnitors to be exonerated by acts of plaintiff, it is necessary that such acts prejudiced them. "A surety may require his creditor to proceed against the principal, or to pursue any other remedy

in his power which the surety can not himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced." (Civ. Code, § 2845.)

### Return of the Bowie Promissory Note

Plaintiff also contends that to avoid further potential losses under its bond and thereby reduce the liability of the indemnitors, it settled with John by receiving his promise to assume and satisfy $10,315.52 of the partnership debts. For this plaintiff returned to the Bowies a $10,000 promissory note which had been executed by the Bowies to plaintiff as security, after plaintiff was called upon by the partnership to pay the materialmen's and laborers' claims. Thus, as far as the indemnitors are concerned, their liability was not increased by this exchange. The court found that the "obligation of $10,315.52 is not related to this case and was not covered by the bonds herein." Inasmuch as these partnership obligations, under the court's finding, were not obligations which the surety company would have been called upon to pay, the indemnitors received no value by this exchange.

The return of the note did not in any way affect the indemnitors. John testified that it had nothing to do with the settlement between him and plaintiff which was finally reached, that it was given at a time when an attempted settlement was being considered and should have been returned to him when that settlement fell through. In any event, its return did not adversely affect the indemnitors. John both as indemnitor and partner was liable to plaintiff, and the giving of the note to plaintiff and its return to John by plaintiff neither increased nor decreased that liability.

### The Agreement Not to Execute

The only writing concerning the release of John by plaintiff appears in plaintiff's letter to him dated November 14, 1958. The part of the letter pertinent to this subject is that, upon John's complying with the requirements set forth therein, plaintiff would deliver to him, *inter alia*, "Letter directed to John Bowie that in the event of judgment against Osborne-Bowie Engineering Contractors, a partnership, such judgment will not be executed against John Bowie, an individual." Apparently, although John admittedly complied with the requirements expected of him, no letter, as promised, was delivered to him. However, it is apparent that all the parties

consider the November 14 letter as an agreement not to execute.

Plaintiff contends that this letter referred only to John's liability as an indemnitor and not to his liability as a partner. However, it is apparent that it applies to his liability in both capacities. The fact that it refers to a judgment against the partnership shows that he was being treated as a partner as well as an indemnitor, for if it was limited to an action against him as an indemnitor, no judgment against the partnership could be obtained. While the letter does not refer to a release of plaintiff's claims against John in either capacity, the promise not to execute has the effect of a release.

The promise not to execute against John as a coindemnitor would not release the other indemnitors from liability as the obligations of the indemnitors under the specific terms of the indemnity agreement executed by them are both joint and several. Being several as well as joint, plaintiff could levy against one without levying against the other.

But we meet a different situation when we consider the effect of the promise not to execute against John as a partner. Doris, not being a partner but an indemnitor, was adversely affected by this fact. As an indemnitor, ordinarily she would have had the right, in the event she was required to indemnify plaintiff for expenditures for the benefit of the partnership, to be subrogated to the right of plaintiff to pursue John Bowie's liability as a partner for the partnership debts. This is a right Doris has as indemnitor even though her right to contribution from her co-indemnitors was unaffected by plaintiff's action. But plaintiff by its action in covenanting not to execute against John for his liability as a partner has denied her this right. Thereby, her obligation of indemnity terminated.

Applicable is section 2849 of the Civil Code, which reads as follows: "A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a co-surety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not." This section requires, in effect, that the indemnitors be entitled to the benefit of the security acquired by plaintiff, namely, the right to pursue the individual partners for reimbursement of any moneys plaintiff is required to pay under its suretyship. In *Hiern* v. *St. Paul-Mercury Indemnity Co.* (5th Cir. 1959) 262 F.2d 526, 529, the court, quoting from *United States Fi-*

*delity & Guaranty Co.* v. *Putfark* (1934) 180 La. 893 [158 So. 9, 10], referred to the "general rule of law that any act on the part of an indemnitee which materially . . . prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity."

■ "It is too well settled both by code enactment and by judicial determination to need any citations, that where there is a material change of the status of the parties to a bond, affecting their substantial rights, without the knowledge or consent of the surety, the surety is relieved from any obligation thereunder. (Civ. Code, §§ 2819, 2840.) (*First Congregational Church of Christ* v. *Lowrey,* 175 Cal. 124-126 [165 P. 440].) " (*People* v. *Fidelity etc. Co. of Maryland,* 28 Cal.App.2d 325, 332 [82 P.2d 495].)

■ The California Supreme Court discussed the duty of a creditor in a surety contract in *County of Glenn* v. *Jones* (1905) 146 Cal. 518, 520 [80 P. 695, 2 Ann.Cas. 764]. Although the facts of that case are not comparable to those in the case at bench, the principles there should apply here. The court said (at pp. 520-521) : "The contract of suretyship imports entire good faith and confidence between the parties as to the whole transaction. The creditor is bound to observe good faith with the surety. He must withhold nothing, conceal nothing, release nothing which will possibly benefit the surety. He must not do any act injurious to the surety or inconsistent with his rights. He must not omit to do any act required by the surety which duty enjoins him to do, if such omission injures the surety. The liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no farther. He has a right to stand on its very terms. (1 Story's Equity Jurisprudence, secs. 324-325; *Tally* v. *Parsons,* 131 Cal. 518 [63 P. 833]; *Carter* v. *Mulrein,* 82 Cal. 167 [22 P. 1086, 16 Am.St.Rep. 98].) . . . 'A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.' (Civ. Code, § 2819.) "

In addition to the duty to exercise good faith and not to alter the indemnity agreement, Civil Code section 2849, hereinbefore quoted, imposes a further duty in regard to security

which comes into the possession of a creditor. This section appears to impose upon a creditor the obligation not to release to the prejudice of the indemnitor, any property which comes under its control and which can be used to satisfy the liability of the surety (see 46 Cal.Jur.2d, Suretyship and Guaranty, § 50, pp. 284, 285; Civ. Code, § 2845).

### The Release of the Attachment on the Bowie Home

As we have shown, plaintiff in giving John a covenant not to execute was, in effect, releasing him from his liability both as a partner and an indemnitor. Plaintiff had attached the Bowie home for John's indebtedness to it in both capacities. As indemnitors, Doris and Walter were entitled to require that plaintiff, at least as far as John's liability as a partner was concerned, either pursue its claim against John and foreclose on any security he might have given, or at least, not releasing any security upon which the other indemnitors as subrogees of plaintiff upon reimbursing plaintiff, could have foreclosed. Thus, in releasing the attachment on the Bowie home, plaintiff made it impossible for Doris and Walter as indemnitors to pursue the security of that attachment thereby, under the provisions of sections 2819 and 2849 of the Civil Code exonerating them from liability under the indemnity agreement.

The situation is somewhat similar to that in *Morley* v. *Dickinson* (1859) 12 Cal. 561, 563, where the court said: "The creditor having secured his debt by a levy on the property of the principal debtor, could not discharge the levy to the injury of the surety. Any extension for a definite period by the creditor to the principal, without the assent of the surety, if the contract be on good consideration, discharges the surety. So any discharge of securities of the principal in the hands, or within the power of the creditor, operates a like discharge of the liability of the surety. This has been held in many cases, and is a well settled principle of law. Parsons on Cont. 510, 514, and cases in note W to P, 511." In our case, the creditor who released the levy which secured the indebtedness of John to it, is plaintiff and the surety of plaintiff are the indemnitors.

What we have said concerning the effect of the promise not to execute on the liability of Doris as an indemnitor applies equally to the liability of Walter as an indemnitor. His liability as such was likewise released.

However, his liability as a partner is not affected. This

action was brought solely against the parties as indemnitors. The complaint does not attempt to allege a cause of action against the partnership or against either John or Walter as partners. Moreover, ''It was stipulated and agreed at the pre-trial conference and later upon motion made by counsel for defendants Walter L. Osborne and Doris H. Osborne that this action is one against the individual indemnitors on said indemnity agreement and not an action against the partnership of Osborne & Bowie Engineering Contractors as such.'' The judgment herein will be without prejudice as to any rights plaintiff may have against the partnership or Walter as a partner.

As the agreement not to execute, given John by plaintiff, and the release of the attachment on the Bowie home, discharged Walter and Doris as indemnitors, the judgment of the trial court that plaintiff take nothing herein must be affirmed.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.