TOWN OF POLAND, Appellant-Respondent, v TRANSAMERICA INSURANCE COMPANY, Respondent-Appellant.

Fourth Department, July 2, 1976

*Erickson & Webb (Paul Webb, Jr.,* of counsel), for appellant-respondent.

*Brown, Kelly, Turner, Hassett & Leach (Ogden R. Brown* and *Bruce R. Fenwick* of counsel), for respondent-appellant.

MAHONEY, J. Plaintiff appeals from that portion of an order of Special Term which granted summary judgment to defendant carrier in an action based on breach of an insurance contract for refusing in bad faith to settle a claim against plaintiff within the policy limits. Defendant appeals from that portion of the order which granted plaintiff's cross motion striking two affirmative defenses of the Statute of Limitations and estoppel asserted in defendant's answer.

Plaintiff (Town) alleged that it incurred damages in the sum of $93,750 due to defendant's (Transamerica) bad faith refusal to settle within the policy limits a claim brought against the Town by Erie-Lackawanna Railway Company. The following facts are undisputed. On March 18, 1968 the Town and Transamerica entered into a contract for liability insurance whereunder Transamerica agreed to indemnify the Town up to the amount of $100,000. The contract further provided that Transamerica defend or at its option settle in the name of the Town any suit brought for damages covered by the contract. On November 21, 1969, while the insurance contract was in effect, a snowplow owned and operated by the Town was struck by a train of Erie-Lackawanna at a public crossing in the Town of Poland. On February 3, 1970 Erie-Lackawanna served a notice of claim on the Town for damage to its property in the sum of $650,000, alleging negligence on the part of the Town in the operation of the snowplow, and, thereafter on March 31, 1970 commenced an action against the Town on such claim. Transamerica undertook the defense of the action pursuant to its contractual obligation, with the Town's attorney participating in the defense by reason of the damage claim being in excess of the $100,000 policy limit. On June 17, 1971 Transamerica was advised that Erie-Lackawanna would settle its claim for the $100,000 policy limit, which offer was to remain open until a pretrial conference

scheduled for June 25, 1971. At the pretrial conference, which the Town's attorney did not attend, Erie-Lackawanna's $100,-000 settlement offer was repeated with the court requesting Transamerica to reply within two weeks and suggesting that the Town be so apprised of the settlement offer and attend the future pretrial conferences. In the forepart of July, 1971 the Town was informed of Erie-Lackawanna's settlement offer and discussions were held between the Town and Transamerica. On July 9, 1971 the Town urged Transamerica to accept the settlement offer, advising that, if an excess judgment were rendered after failure to settle, the Town would take appropriate measures against Transamerica. The carrier, however, took the position that a valid defense of contributory negligence may well exist by virtue of provisions contained in section 21 of the Railroad Law and cases decided thereunder. Following a second pretrial conference on July 30, 1971 Erie-Lackawanna's offer of settlement was apparently withdrawn. On September 13, 1971 the Town advised Transamerica that the latter's failure to attempt to negotiate a settlement was jeopardizing the Town's position and that "if necessary, the Town might be willing to assume some modest share of any settlement, if this is any inducement or stimulus to such action on your part", with repeated admonition that the Town intended to take legal action if Transamerica persisted in not attempting to settle the claim and an excess judgment resulted. Transamerica thereafter did in fact make a settlement offer to Erie-Lackawanna in the amount of $50,000 which was rejected. On November 1, 1971 Erie-Lackawanna's damages were stipulated in the amount of $505,233.37, which stipulation was signed and executed by representatives of all parties. On June 12, 1972 Erie-Lackawanna commenced a proceeding for reorganization under the Federal Bankruptcy Act, with settlement negotiations thereafter being continued with the trustees in bankruptcy, which trustees in July, 1972 advised that any previous settlement offer was withdrawn. Notwithstanding, on November 2, 1972 Transamerica did offer $100,-000 in settlement, which offer was rejected by the trustees on November 10, 1972. On December 8, 1972 a tentative settlement agreement of Erie-Lackawanna's claim for $193,750 was reached, with $100,000 to be paid by Transamerica and the balance of $93,750 to be paid by the Town. Following the requisite implementation approval by the Town Board and the Federal District Court, settlement was finalized and payment made by the Town and Transamerica on January 29, 1973.

Against this background the Town on November 19, 1974 commenced the instant action against Transamerica for damages alleging that Transamerica breached its contractual obligation to act in good faith in its settlement negotiations with Erie-Lackawanna by "gambling" that it could achieve a lower settlement in spite of the "high risk" that judgment would be rendered against the Town in the sum in excess of $500,000 if the action went to trial. Transamerica's answer denied liability and asserted three affirmative defenses: (1) that any action sounding in negligence was time barred since the cause of action accrued more than three years prior to the commencement of the action; (2) that the Town's participation in the ultimate settlement agreement and Transamerica's payment of the full policy limits estopped the Town from seeking recovery of $93,750 it voluntarily paid on the settlement; and (3) that by paying the full policy limits Transamerica completely discharged its obligation to the Town and was relieved of any further liability.

Following service of responses to the Town's interrogatories, no other disclosure proceedings under article 31 of CPLR having been utilized by either party, Transamerica moved for summary judgment pursuant to CPLR 3212 and the Town cross-moved pursuant to CPLR 3211 (subd [b]) for dismissal of the three affirmative defenses. In opposing Transamerica's motion for summary judgment the Town urged that many facts necessary to prove its claim of bad faith on the part of Transamerica were in defendant's exclusive control concerning which discovery had not yet been undertaken and thus under CPLR 3212 (subd [f]) the granting of defendant's motion was precluded. In addition, the Town urged that whether Transamerica had discharged its duty of good faith negotiations in settlement was a question of fact for jury determination foreclosing the award of summary judgment.

Special Term properly dismissed the asserted affirmative defense of the Statute of Limitations. An analysis of the complaint clearly evidences an action for breach of a contractually implied obligation as opposed to one "sounding in negligence" and, therefore, it is the six-year limitation under CPLR 213 (subd 2) that applies.

The dismissal by Special Term of the affirmative defense of estoppel was also proper. The general principle of contract law, that an injured party must make reasonable efforts to minimize damages or be barred from recovering losses which

could reasonably have been avoided, is applicable to indemnity contracts (Fuchsberg, Encyclopedia of New York Law, Damages, vol 9 § 121; vol 10, § 585; McCormick, Damages, § 33). The Town's action in joining in the settlement of Erie-Lackawanna's claim was consistent both in avoiding greater risk to itself and in mitigating the damages ultimately here asserted against Transamerica for alleged breach of its contractual obligation. The elements of estoppel involve conduct which is inconsistent with a position a party ultimately intends to or does assert, usually with the intent that the other party act upon such conduct (21 NY Jur, Estoppel, §§ 21, 24). However, the doctrine of estoppel requires a consistency of conduct only when inconsistency would work substantial injury to the other party, an element not here presented *(Matter of Wadhams,* 249 App Div 271, 278-279). The record contains no allegation that the Town misled or misrepresented its intent or its position to Transamerica. To the contrary, the Town steadfastly maintained its position that refusal on the part of Transamerica to settle within the policy limits would result in the Town taking appropriate action if excess liability resulted. Nor does Transamerica allege that it was induced to settle the Erie-Lackawanna claim in reliance on the Town's action in joinder in the settlement. Such allegation is essential to show that it was somehow injured by the actions of the Town in inducing a settlement.

Special Term's grant of summary judgment to Transamerica, however, was not here warranted, premised as it was on a determination that, as a matter of law, Transamerica was not guilty of bad faith in its settlement negotiations on the Erie-Lackawanna claim, based upon the one contention that there existed an honest disagreement as to liability by reason of possible contributory negligence on the part of Erie-Lackawanna. In light of the multifaceted factors bearing upon a determination of good faith, whatever the standard may be, Special Term's determinative credence given to one element thereof constitutes an oversimplification of the issue before it.

A review of New York decisional precedent indicates that at this juncture no definitive standard of good faith in settlement negotiations applicable to a carrier's obligation to its insured has yet evolved. In *Knobloch v Royal Glove Ins. Co.* (38 NY2d 471, 477-478) the Court of Appeals, limiting its consideration solely to the sufficiency of the record to sustain a jury verdict under the trial court's charge in defining a standard of "good

faith" to which no exception was taken and which thus became the law of the case, specifically noted: "There is no occasion to consider whether the standard laid down by the trial court for the determination of bad faith on the part of the carrier in failing to settle within policy limits is legally correct, and we leave that issue for address in another case, intending here to intimate no view with respect to the charge given in this case."

The early New York cases seem to have given the insurance carrier a rather free hand in deciding whether or not to settle (see *Best Bldg. Co. v Employers' Liab. Assur. Corp.*, 247 NY 451; *Streat Coal Co. v Frankfort Gen. Ins. Co.*, 237 NY 60; *Auerbach v Maryland Cas. Co.*, 236 NY 247). There followed a line of Federal Second Circuit Court decisions interpreting New York law, from which evolved a standard of good faith, holding, in essence, that an insurance company must consider the assured's interest as well as its own in arriving at a decision whether to settle within the policy limits *(Brown v United States Fid. & Guar. Co.*, 314 F2d 675; *Young v American Cas. Co.*, 416 F2d 906, cert dsmd 396 US 997; *Brockstein v Nationwide Mut. Ins. Co.*, 417 F2d 703, cert den 405 US 921; *Peterson v Allcity Ins. Co.*, 472 F2d 71).

The Court of Appeals in *Gordon v Nationwide Mut. Ins. Co.* (30 NY2d 427, 437, cert den 410 US 931), in its consideration of the standard of good faith of an insurance carrier which denied coverage based upon advice of counsel, concededly expressed a rather stringent standard, viz, "bad faith requires an extraordinary showing of disingenuous or dishonest failure to carry out a contract". However, thereafter in *Decker v Amalgamated Mut. Cas. Ins. Co.* (35 NY2d 950, 952-953), the Court of Appeals, while accepting the *Gordon* standard for determining good faith, significantly observed:

"We conclude that it cannot be said on this *motion for summary judgment* that an allegation of reliance on advice of counsel in such circumstance as a matter of law negates a charge of bad faith refusal, even bad faith of the dimension demanded by *Gordon.* * * *

"*Gordon* laid down the prerequisites for imposition on an insurer of a liability potentially greatly in excess of the policy limits on the basis of which its premiums had been calculated. Whether such prerequisites can be met in this case *must await trial.*"(Emphasis added.)

So, too, in the instant appeal, whatever may be the appro-

priate standard for determining good faith, involving as it does many factors and considerations not here necessary for us to delineate, summary judgment is not the appropriate procedural vehicle for disposition of this case. Special Term's order, therefore, insofar as it granted defendant's motion for summary judgment should be modified by denying the motion, and as modified the order affirmed.

MARSH, P. J., MOULE, CARDAMONE and DILLON, JJ., concur.

Order unanimously modified in accordance with opinion by MAHONEY, J., and as modified affirmed, without costs.