717 P.2d 930

Jerry SKOUSEN and Pecan Centers of Arizona, Inc., an Arizona corporation, Plaintiffs/Appellants,

v.

W.C. OLSEN INVESTMENT CO., a Utah partnership, Defendant/Appellee.

PECAN CENTERS OF ARIZONA, INC., and Arizona corporation, Jerry Skousen and Myrna Skousen, Third-Party/Plaintiffs/Appellants,

v.

W.C. OLSEN INVESTMENT CO., a Utah partnership, Third-Party/Defendant/Appellee.

Nos. 2 CA–CIV 5472, 2 CA–CIV 5473.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 27, 1986.

Review Denied April 15, 1986.

252

Killian, Legg, Nicholas, Fischer, Wirken, Cook & Pew by Charles W. Wirken, Mesa, for plaintiffs/appellants.

Wright & Decker by Roger C. Decker, Mesa, for defendant/appellee.

HATHAWAY, Chief Judge.

Appellants challenge the trial court's granting of summary judgment and the granting of relief from a default judgment. Appellants assert entitlement to relief pursuant to their contract of indemnification with appellee. We disagree and affirm.

On May 27, 1978, appellants contracted to sell their interest in a joint venture known as Pecan Centers of Arizona to appellee. The purchase price of $2,350,000 was paid by a $1,000,000 promissory note secured by a deed of trust plus assumption of certain obligations, including two prior deeds of trust, one to John Hancock Life Insurance Company (John Hancock) for $1.2 million dollars, and the other to Reed Irrigation Systems (R.I.S.) for $150,000. Appellants remained liable on those obligations, but the contract required appellee to indemnify appellants. The release indemnification agreement states:

"Buyer does hereby undertake and agree to indemnify sellers and save them harmless of and from any obligation which they have incurred in connection with the formation and operation of a joint venture known as 'Pecan Groves of Arizona.'"

The buyers subsequently defaulted upon the obligations to John Hancock, R.I.S. and appellants. On March 26, 1982, R.I.S. commenced an action against appellants to foreclose on its deed of trust. Appellants noticed a trustee's sale that same year, as did John Hancock the next year. On August 23, 1982, appellants reacquired title to the pecan groves at the trustee's sale upon their third deed of trust. Appellants also filed a third-party complaint for indemnification against appellee in the R.I.S. action. On April 25, 1983, partial default judgment was entered in appellants' favor for any amounts which R.I.S. might recover against appellants. To avoid foreclosure on August 15, 1983, appellants paid R.I.S. $190,178.78 with borrowed funds secured by a note. Final default judgment in the above amount was entered in favor of appellants. On November 8, 1983, appellants paid John Hancock $322,199.87, also with borrowed funds secured by a note, to reinstate the first deed of trust. They also paid $9,971.21 in property taxes.

In December 1983, appellants resold the pecan groves for approximately $3,500,000. As part of the purchase price, the buyer assumed the John Hancock note and the two obligations appellants had incurred in order to pay R.I.S. and John Hancock. On

February 2, 1984, appellants brought this action against appellee to recover the amount paid to John Hancock and the unpaid property taxes. Appellee filed a motion for summary judgment, which was granted. Appellee also moved for relief from default judgment pursuant to Rule 60(c)(5) and (6), Rules of Civil Procedure, 16 A.R.S. The trial court granted relief. After entry of judgment in both actions, this appeal was noticed.

Appellants raise two issues on appeal: (1) appellee was not entitled to summary judgment as a matter of law because the contract called for reimbursement for any sums paid to John Hancock or used to pay taxes; (2) the superior court abused its discretion by granting relief from default judgment because the judgment had not been satisfied pursuant to Rule 60(c)(5), and Rule 60(c)(6) was misused.

It is apparent in the above-stated figures that, due to the default and resale of the pecan groves, appellants have actually made a greater profit than if appellee had never defaulted, even acknowledging the debts incurred to pay John Hancock and R.I.S. The original contract called for a $1 million profit in favor of appellants plus assumption of $1.35 million in debts by appellee. Subsequent to the default, appellants incurred $512,378.60 in debt (money borrowed to pay R.I.S. and John Hancock). The new purchaser paid $3.5 million for the property. Included in that purchase price was assumption of the John Hancock debt (now $1.1 million) plus assumption of the $190,178.73 debt, which is, in effect, the same debt originally owed to R.I.S., but now financed by another party, and the debt of $322,199.87 incurred to pay John Hancock. Added together, these debts total $1,612,378.60. Subtracted from $3.5 million, there is now a net profit of $1,887,-621.40, over $800,000 more than appellant would have received if appellee had not defaulted. Even allowing for some margin of error in the above calculations due to miscellaneous expenses incurred by appellants, it is clear appellants' profit is greater than they originally had anticipated.

Our inquiry must then focus on whether appellants' indemnification agreement calls for payment despite no actual loss to appellants. The extent of a contractual duty to indemnify must be determined from the contract itself. Such contracts are construed to cover those losses or liabilities which reasonably appear to have been intended by the parties. *Estes Company v. Aztec Construction, Inc.*, 139 Ariz. 166, 677 P.2d 939 (App.1983); *Shirley v. National Applicators of California, Inc.*, 115 Ariz. 521, 566 P.2d 322 (App.1977); *Barnes v. Lopez*, 25 Ariz.App. 477, 544 P.2d 694 (1976). There is authority to support the proposition that indemnity contracts may be written to protect against not only loss and damage but also exposure to liability. 41 Am.Jur.2d, Indemnity, § 1 (1968); 42 C.J.S., Indemnity, §§ 12A and 13A (1944). It is, however, the contract itself which is controlling.

■ This contract states that "buyer does ... agree to indemnify seller and *save them harmless.*" (Emphasis added) The terms "to save harmless" or "hold harmless" have been interpreted to protect against only actual loss or damage. *New York Central Railroad Company v. General Motors Corporation*, 182 F.Supp. 273 (N.D.Ohio 1960); *Westville Land Company v. Handle*, 112 N.J.L. 447, 171 A. 520 (1934); *Pinney v. Tarpley*, 686 S.W.2d 574 (Tenn.App.1984); *Security Service, Inc. v. Transamerica Title Insurance Company*, 20 Wash.App. 664, 583 P.2d 1217 (1978). Thus, under the language of this contract, appellants were entitled to indemnification only against actual loss and damage.

Additionally, it is obligation of the indemnitee to mitigate his damages. *American Surety Company of New York v. Franciscas*, 127 F.2d 810 (8th Cir.1942); *Columbia Casualty Company v. Tibma*, 63 F.2d 538 (7th Cir.1933); *Massachusetts Bonding and Insurance Company v. Osborne*, 233 Cal.App.2d 648, 43 Cal.Rptr. 761 (App. 1965); *Town of Poland v. Transamerica Insurance Company*, 385 N.Y.S.2d 987, 53 A.D.2d 140 (1976). Appellants have effectively mitigated their damages so that

there are no losses and have made an even greater profit than before. Appellants' argument that the contract provided for payment in spite of the absence of any loss on their part is without merit. The trial court was correct in granting summary judgment.

The granting of relief from a judgment pursuant to Rule 60(c) is within the sound discretion of the trial court and is not to be reversed unless a clear abuse of discretion is proven. *Staffco, Inc. v. Maricopa Trading Company*, 122 Ariz. 353, 595 P.2d 31 (1979). Rule 60(c)(6) confers on the trial court broad equitable powers to grant relief from judgment when justice so requires. We cannot say that the trial court abused its discretion in granting relief under these circumstances. In light of the above holding, we need not address appellee's merger argument.

Affirmed.

HOWARD, P.J., and FERNANDEZ, J., concur.