852 P.2d 1226

**Mary Ann HAUSKINS, a married woman; Jennifer Skiba and Albert Skiba, husband and wife, Plaintiffs–Appellants, Cross Appellees,**

v.

**Terrance McGILLICUDDY, Third–Party Defendant–Appellee, Cross Appellant.**

**No. 1 CA–CV 91–397.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 20, 1992.

Review Granted on issue No. 2 and Denied on all other issues June 15, 1993.

Roush, McCracken & Guerrero by Charles D. Roush, Virginia S. Ornelas, Phoenix, for plaintiffs-appellants, cross appellees.

Renaud, Cook, Videan, Geiger & Drury, P.A. by J. Gordon Cook, Charles A. Struble, Walter Grochowski, Phoenix, for defendant-appellee, cross appellant.

## OPINION

GRANT, Presiding Judge.

This case is an appeal from a summary judgment holding that an attorney's failure to timely file a claim against the State constituted "excusable neglect," as a matter of law, for purposes of Ariz.Rev.Stat. Ann. ("A.R.S.") section 12–821 (authorization of claim against public entity or public employee). Because we hold that the issue of what constitutes attorney "excusable neglect" for purposes of A.R.S. section 12–281 is a question of fact for a jury, we reverse and remand for further proceedings consistent with this opinion.

## FACTS & PROCEDURAL HISTORY

In reviewing a trial court's grant of a motion for summary judgment on appeal, we state the facts in a light most favorable to the parties who opposed the motion for summary judgment. *Ammer v. Arizona Water Company*, 169 Ariz. 205, 818 P.2d 190 (App.1991). This case arises out of a complaint for personal injuries and other damages incurred by Mary Ann Hauskins and Jennifer and Albert Skiba ("plaintiffs") in a car accident on State Route 260 near Eager, Arizona, on September 21, 1985. The plaintiffs were passengers in an automobile driven by John Hauskins ("Hauskins") heading west on State Route 260 when an oncoming vehicle crossed the center-line into Hauskins's lane of traffic. To avoid the oncoming car, Hauskins drove his vehicle off the paved surface of the roadway, causing severe damage to his vehicle and injuries to the passengers.

At the time of this incident, State Route 260 was under repair and reconstruction by the State of Arizona ("State") and the Corn Construction Co. ("Corn"). According to plaintiffs, the construction had created a dangerous drop-off condition between the roadway and the unpaved shoulder without providing an adequate recovery area free from obstructions. No warning signs advised westbound motorists of the drop-off condition of the pavement. No other traffic control devices, such as a properly striped center-line, or barricades or other delineations marked the drop-off. Consequently, plaintiffs alleged that the State and Corn were negligent in reopening the highway to traffic prior to providing for the safety of the motoring public.

On March 19, 1986, plaintiffs retained the services of Terrence McGillicuddy ("McGillicuddy"), a Phoenix attorney, to represent them in their claim for damages sustained as a result of the accident. On March 19 or 20, 1986, McGillicuddy first determined that, in addition to other defendants, the State of Arizona might be liable to the plaintiffs for damages. At the time he made that determination, McGillicuddy was aware that, in order to maintain a cause of action against the State, A.R.S. section 12–821 required the filing of a notice of claim with the State within 12 months of the date of the accident. McGillicuddy therefore "instructed his secretary to make an entry on to her calendar for September 1, 1986 to remind him to prepare, file and serve the required notice of claim upon the State...." The actual notice of claim needed to be filed with the

State by September 20, 1986. According to McGillicuddy, his "practice ... [was] to have his secretary enter deadlines for filings including notices of claims on to the calendaring system which was kept on his secretary's desk."

Despite the fact that a reminder was duly entered on the office calendar, McGillicuddy failed to file the notice of claim with the State by the September 20 filing deadline. McGillicuddy's regular secretary missed the reminder because she was on vacation during the two weeks prior to September 1, 1986. The two temporary secretaries who covered the office in the regular secretary's absence also failed to note the entry on the calendar page for September 1, 1986, and to bring it to McGillicuddy's attention. Monday, September 1, was a national holiday in 1986; and, when McGillicuddy's regular secretary returned to her desk on September 2, she admittedly failed to consult the previous day's calendar page for any filing deadlines. McGillicuddy never checked the office calendar himself, since his "practice" was to rely on his secretaries to remind him of filing deadlines. To exacerbate matters further, from approximately the end of August to the middle of September 1986, McGillicuddy was involved in relocating his law office to new quarters. Unexpectedly, McGillicuddy and his secretary were constrained to work out of separate office locations for a period of time in September, when the new quarters were not completed for occupancy by September 1 as scheduled.

In his deposition, McGillicuddy testified that not until sometime in October 1986, did he become aware that he had missed the September filing deadline. He had no recollection of precisely how or when he became aware of his lapse. When McGillicuddy discovered his omission, he referred the plaintiffs to another attorney because he thought he "had a conflict." Plaintiffs ultimately retained a third attorney and a suit was filed against three defendants—the State, John Hauskins and Corn.

In October, 1988, the State moved to dismiss plaintiffs' complaint based on plaintiffs' failure to comply with the filing deadline of A.R.S. section 12–821. The trial court denied the motion in part and ruled that plaintiffs' claim against the State was not barred by the statute, since plaintiffs' failure to comply with the statutory filing deadline was not due to plaintiffs' neglectful conduct but was instead a product of the neglectful conduct of their former attorney, McGillicuddy. In accordance with established procedures under A.R.S. section 12–821, the trial court preliminarily determined that McGillicuddy's conduct was not "excusably" neglectful and that his conduct "may give rise to the right of the defendant State to seek indemnification from him." The State then filed a motion to file a third-party complaint against McGillicuddy, wherein the State asked McGillicuddy to indemnify it in the full amount of plaintiffs' recovery, if any, against the state. This motion was granted by the trial court.

Plaintiffs and the State eventually entered into a settlement agreement whereby, upon payment to plaintiffs Skiba of $50,000 and to plaintiff Mary Ann Hauskins of $250,000 by the state in a stipulated judgment and $50,000 to plaintiffs by Corn, plaintiffs agreed to dismiss with prejudice all claims against Corn and the State agreed to assign to plaintiffs any right of indemnity the State might have against McGillicuddy pursuant to A.R.S. section 12–821.[1] In November of 1990, the trial court entered judgment pursuant to the settlement agreement signed by the parties. Plaintiffs then proceeded with their action against McGillicuddy on the third-party complaint, standing in the place of the State.

In March, 1991, McGillicuddy filed two motions for summary judgment with the trial court. The first motion argued that plaintiffs were not entitled to statutory indemnity under A.R.S. section 12–821 because that statute was a "budgetary stat-

---

1. Plaintiffs also entered into a settlement agreement with John Hauskins, who is not a party to this litigation.

ute," intended by the legislature to protect the State only when the State was obligated to expend funds from its coffers. McGillicuddy maintained that, because the terms of the settlement agreement provided that plaintiffs would not execute on their judgment against the State, the State had expended no State funds in defending this action. Thus, according to McGillicuddy, the State was not entitled to indemnity from him under A.R.S. section 12–821, and plaintiffs, standing in the State's place, were also precluded from obtaining indemnity from him. This motion was denied by the trial court.

McGillicuddy also filed a motion for summary judgment, arguing that his failure to timely file the notice of claim against the State constituted "excusable neglect" as a matter of law. Plaintiffs filed a cross-motion for summary judgment, asking the trial court to find that, as a matter of law, McGillicuddy's failure to timely file the notice of claim did not constitute "excusable neglect." The trial court granted McGillicuddy's motion for summary judgment on the issue of "excusable neglect," and plaintiffs filed a timely notice of appeal.

## DISCUSSION

We will affirm the trial court's grant of a motion for summary judgment if there is no genuine issue of material fact in dispute and if the moving party is entitled to judgment as a matter of law. *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990). The issue raised by plaintiffs on appeal is whether the trial court erred in granting summary judgment in favor of McGillicuddy and in ruling that McGillicuddy's conduct in failing to timely file the notice of claim constituted "excusable neglect."

We begin our discussion with A.R.S. section 12–821 which provides in relevant part:

A. Persons who have claims against a public entity or public employee shall file such claims in the same manner as that prescribed in the Arizona Rules of Civil Procedure, Rule 4(D) within twelve months after the cause of action accrues. Any claim which is not filed within twelve months after the cause of action accrues is barred and no action may be maintained except upon a showing of excusable neglect if the action is brought within the otherwise applicable period of limitations, provided that if there is no excusable neglect, and if the absence of excusable neglect is because of the conduct of the claimant's attorney, then the action shall proceed, and the public entity and the public employee shall have a right of indemnity against the claimant's attorney for any liability assessed in the action.

\* \* \* \* \* \*

(E) For the purposes of this section "excusable neglect" means reasonable and foreseeable neglect or inadvertence.

■■■ The purpose of "claims statutes" such as A.R.S. section 12–820 *et seq.* is "to provide notice to the State of claims against it, to permit the possibility of settlement prior to litigation and to assist in the budgeting process." *City of Tucson v. Fleischman*, 152 Ariz. 269, 272, 731 P.2d 634, 637 (App.1986); *State v. Brooks*, 23 Ariz.App. 463, 534 P.2d 271 (1975). As this court stated in *Fleischman*, "[t]he obvious purpose of the provisions of A.R.S. section 12–821(A) pertaining to cases where the notice of claim is not filed or is untimely is to protect a claimant from the consequences of his attorney's negligence." 152 Ariz. at 272, 731 P.2d at 637. Thus the only situation in which an action against the State may be dismissed under A.R.S. section 12–821(A) is where the trial court determines that "the failure to timely file the notice was due to the conduct of the claimant and ... that his conduct was not 'excusable'. In all other cases, the action shall proceed." *Id.* When a notice of claim is not timely filed because of counsel's conduct, the procedures call for the trial court to make a preliminary finding regarding whether counsel's conduct was "excusable." *Id.* If the court preliminarily determines that counsel's conduct was not "excusable" and the action proceeds to judgment against the State, then the State is entitled to seek indemnification from the attorney to the extent of the state's liability. *Id.* Since counsel was not a party to

the original litigation, counsel is not bound in the indemnity action by the trial court's preliminary finding but "may defend on any grounds showing excusable neglect." *Id.* Under A.R.S. section 12–821(A), the State will therefore not be entitled to indemnity from a claimant's attorney if the attorney's actions leading to the notice of claim not being timely filed constitute "excusable neglect" under the statute. Excusable neglect is defined in section (E) of A.R.S. 12–821 as "reasonable or foreseeable neglect or inadvertence."

In this case, the parties disagree both as to the appropriate standard for determining what constitutes "excusable neglect" under the statute and as to whether McGillicuddy's conduct in failing to file was, in fact, "excusable."

*Excusable Neglect*

■ McGillicuddy argues that, by employing the same phrase, "excusable neglect" in A.R.S. section 12–821(A) as is used in Rule 60(c) of the Arizona Rules of Civil Procedure, the legislature can be presumed to have adopted the same standard for determining whether counsel's conduct is "excusable" as that employed under Rule 60(c) of the Arizona Rules of Civil Procedure. Rule 60(c) provides in relevant part:

> 60(c) **Mistake; inadvertence, surprise; excusable neglect; newly discovered evidence, fraud, etc.** On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; ...

Our supreme court has held that the "standard for determining whether conduct is 'excusable'" under Rule 60(c) for purposes of determining propriety of relief from judgment "is whether the neglect or inadvertence is such as might be the action of a reasonably prudent person under the same circumstances." *City of Phoenix v. Geyler,* 144 Ariz. 323, 331, 697 P.2d 1073, 1081 (1985).

McGillicuddy contends that the fact that the statutory definition of "excusable neglect" in A.R.S. section 12–821(E) and the definition of Rule 60(c) "excusable neglect" in *Geyler* are "almost identical," further supports his view that the legislature intended the standard for determining whether counsel's conduct constitutes "excusable neglect" for purposes of A.R.S. section 12–821 be the same as that for Rule 60(c).

Plaintiffs argue that "clear evidence" that the legislature did *not* intend the Rule 60(c) definition of "excusable neglect" to apply to A.R.S. section 12–821 may be found in the fact that the legislature chose to specifically define "excusable neglect" in A.R.S. 12–821(E). "Had the legislature intended the Rule 60(c) definition to apply," plaintiffs contend, "it would have set forth that definition in A.R.S. section 12–821(E)." Plaintiffs argue that by giving "excusable neglect" a specific definition in A.R.S. section 12–821 that differs from the Rule 60(c) definition, "it was obviously the intent of the legislature to create a new and different meaning for A.R.S. § 12–821 purposes," one "... very similar to the definition of professional negligence."

"The language of a statute is the most reliable evidence of its intent." *Walker v. City of Scottsdale,* 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App.1989). Where a statute expressly defines certain words and terms used in the statute, the court is bound by legislative definition in all cases where rights of the parties litigant are based upon the statute." *Id.* In enacting A.R.S. section 12–821, the legislature chose the phrase "excusable neglect" to define the type of conduct that would absolve an attorney from the indemnity provision. "Excusable neglect" was expressly defined by the legislature as "reasonable and foreseeable neglect or inadvertence." We agree with McGillicuddy that, had the legislature intended to adopt a negligence or malpractice standard for determining attorney "excusable neglect" under A.R.S. section 12–821, it would have done so by expressly using those terms in the statute. Instead, by employing the phrase "excusable neglect" and defining it similarly to the definition of "excusable neglect" under

Rule 60(c), the legislature chose a standard for excusing attorney conduct analogous to that of Rule 60(c). Thus we hold that the standard for determining whether an attorney's conduct constitutes "excusable neglect" for purposes of A.R.S. section 12–821 is the same as that for determining "excusable neglect" pursuant to Rule 60(c).

■ In arguing that his failure to file a timely notice of claim constituted "excusable neglect," McGillicuddy relies on several cases decided pursuant to Rule 60(c). *See Coconino Pulp & Paper Co. v. Marvin*, 83 Ariz. 117, 317 P.2d 550 (1957); *Wilshire Mtg. Corp. v. Elmer Shelton Concrete Contractor, Inc.*, 97 Ariz. 65, 397 P.2d 50 (1964); and *Cook v. Industrial Comm'n of Arizona*, 133 Ariz. 310, 651 P.2d 365 (1982). In each of these cases, our supreme court found that an attorney's reliance on a secretary to remind him of dates entered on a calendaring system was reasonable under the circumstances and that the attorney's subsequent failure to meet a filing deadline because of a secretary's failure to remind him of a calendared deadline constituted "excusable neglect." McGillicuddy contends that the legislature has codified the holding of *Coconino Pulp* in its definition of Rule 60(c) "excusable neglect" and that, therefore, his reliance on his secretary to remind him of the duly calendared filing deadline in this case was reasonable. Consequently, McGillicuddy maintains that his failure to timely file was "excusable" as a matter of law and that the trial court was correct in so finding and in granting summary judgment. We disagree.

In *Pritchard v. State*, our supreme court held that "[b]ecause we held that § 12–821 is not jurisdictional but is analogous to a statute of limitations, disputed issues of fact must be resolved by the jury, not the trial court." 163 Ariz. 427, 433, 788 P.2d 1178, 1184 (1990). Since the question of "excusable neglect" is an issue of fact for the jury, we find that the trial court erred in granting summary judgment on that issue.

Furthermore, the record shows that material issues of fact existed as to whether McGillicuddy's actions were reasonable un-

der the circumstances and therefore "excusable." The parties below disputed whether the system for calendaring deadlines McGillicuddy employed was adequate, whether it was reasonable for McGillicuddy to rely solely on his secretary to remind him of filing deadlines, and whether McGillicuddy had any additional responsibility for keeping track of filing deadlines himself. While McGillicuddy relies on cases such as *Coconino Pulp, Wilshire Mtg.*, and *Cook*, to establish that his failure to file was "excusable" as a matter of law, those cases are distinguishable from the present one and therefore not dispositive. Since McGillicuddy relies primarily on the supreme court's decision in *Coconino Pulp*, which he claims to be the "seminal case in Arizona on the issue of excusable neglect," we will address our comments to that case.

*Coconino Pulp* involved "a sizeable law firm with several associates which handle[d] extensive litigation." 83 Ariz. at 119, 317 P.2d at 551. The "firm employed a secretary whose duties were to prepare and distribute to the respective attorneys calendar sheets for the purpose of reminding such attorneys of the necessity of preparing and filing pleadings." *Id.* In *Coconino Pulp*, the supreme court held that an attorney's failure to timely file an answer when he failed to receive a calendar sheet from the secretary reminding him that an answer was due constituted "excusable neglect" under Rule 60(c) because "[a]ny reasonable person under such circumstances would place reliance upon the proper performance of the services of such a secretary." 83 Ariz. at 121, 317 P.2d at 552. The supreme court found that "[w]hen the conditions warrant the operation of such a system, absent some showing of inefficiency or undependability of the secretary, the attorneys should be justified in assuming that they will be properly informed concerning the status of their cases." *Id.*

Contrary to the Rule 60(c) question of *Coconino Pulp*, we find that in this case a fact question exists as to whether McGillicuddy had a system for calendaring deadlines at all.

In his deposition, McGillicuddy testified that his "system" consisted of telling a secretary to place an entry on her office calendar some indeterminate number of days prior to a filing deadline and then relying on the secretary to bring the entry to McGillicuddy's attention. However McGillicuddy testified that, in some instances, he would also calendar deadlines on his personal appointment calendar and, in other instances, he would not; McGillicuddy could not recall whether, in this instance, he had made an entry for the plaintiffs' claim on his own calendar. McGillicuddy testified that "... in most instances, [he'd] have [his] secretary calendar a date prior to the time that the statute ran or the time had run," but that "in a lot of instances, [he'd] file the suit immediately...." While McGillicuddy testified that he did not have any "policy" for how far in advance to calendar a reminder, "... it was a date that [he] would choose that ... had a sufficient time gap that would allow us to get it done and recorded and filed and whatever else had to be done." McGillicuddy's deposition also disclosed that his calendaring "system" does not include procedures for creating backup reminders for deadlines or even for entering *actual* due dates on the calendar. Furthermore, McGillicuddy testified that he had no set procedures for keeping track of forthcoming deadlines on the calendar during periods when his secretary was away for an extended time, such as, for example, on vacation, other than to expect the secretary to "[fill] [the temporaries] in on what had to be done." We find the facts in this case sufficiently differ from those in *Coconino Pulp* to an extent that the case is not dispositive. Reasonable people may differ as to whether, given the circumstances of this case, McGillicuddy's reliance on his secretary to remind him of the filing deadline was "reasonable" and whether his failure to file "excusable." Issues of fact such as excusable neglect generally are matters properly left for a jury and not to be resolved by a judge. *Pritchard*, 163 Ariz. at 433, 788 P.2d at 1184. Therefore, we reverse and remand this case to the trial court for further proceedings.

*Cross Appeal/Right of Indemnity of State*

■ Since we have remanded the case to the trial court on the issue of "excusable neglect," we address McGillicuddy's cross-appeal on the issue of whether the trial court erred in denying his motion for summary judgment based on his argument that plaintiffs were not entitled to statutory indemnity under A.R.S. section 12–821. While, normally, the denial of a motion for summary judgment is neither an appealable order, nor reviewable on appeal from a final judgment, this court may review such an order when the denial is based strictly on a point of law. *Fleitz v. Van Westrienen*, 114 Ariz. 246, 560 P.2d 430 (App.1977). Having jurisdiction of the appeal we have jurisdiction to decide if the trial court reached the right conclusion.

In November, 1990, after failed attempts to enlist McGillicuddy's and his insurance carrier's participation in settlement negotiations, plaintiffs, Corn and the State entered into an agreement for stipulation of judgment. In the settlement agreement, plaintiffs agreed to dismiss with prejudice all claims against Corn and the State in return for payment to plaintiffs by Corn of $50,000 and by the State of $250,000 to Mary Ann Hauskins and $50,000 to the Skibas. As part of the agreement, plaintiffs further agreed not to execute on the stipulated judgment against the State, from either the assets of the State or its insurers, and the State agreed to assign to plaintiffs any and all rights and causes of action it had against McGillicuddy under A.R.S. section 12–821.

McGillicuddy argues that a State's right to indemnity under A.R.S. section 12–821 applies only when the State seeks indemnity from an attorney whose conduct was not excusably neglectful for State monies it has paid or is obligated to pay to a claimant. Since, by virtue of the terms of the settlement agreement, the State has not disbursed and will never disburse any State funds to plaintiffs for the accident, McGillicuddy contends that the State is not entitled to indemnity from him in this case. Consequently, McGillicuddy maintains, the

State had "no basis for assigning to plaintiffs indemnity rights it did not have," and the trial court erred in denying summary judgment on this issue. McGillicuddy also maintains that the State's contract with Corn called for Corn to indemnify the State against the State's own liability. Thus, McGillicuddy argues, the State was further relieved of any potential obligation to pay for any negligence assessed against it. We find McGillicuddy's arguments to be without merit.

First, the language of the contract between Corn and the State shows that Corn was obligated to indemnify the State only against liability assessed against the State because of Corn's own or Corn's subcontractors' negligence. The relevant portion of the State's contract with Corn provides as follows:

> Article IX—THE CONTRACTOR SHALL INDEMNIFY AND HOLD HARMLESS THE STATE, its officers and employees, from all suits, actions or claims of any character brought because of any injuries or damage received or sustained by any person, persons or property on account of the operations of the said contractor or on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable material in constructing the work; or because of any act or omission, neglect or misconduct of said contractor; or because of any claims or amounts recovered from any infringements of patent, trademark or copyright; or from any claims or amounts arising or recovered under the Workmen's Compensation Act or any other law, ordinance, order or decree.

It is well established in Arizona that an agreement for indemnity will not be interpreted to indemnify against the indemnitee's own negligence or wrongdoing unless that provision is expressly provided for within the indemnification agreement in clear and unambiguous terms. *Shirley v. National Applicators of Cal. Inc.*, 115 Ariz. 521, 566 P.2d 322 (App.1977); *Superior Cos. v. Kaiser Cement Corp.*, 152 Ariz. 575, 733 P.2d 1158 (App.1986); *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 733 P.2d 652 (App.1986); *Dow Chemical Finance Corp. v. Marana Assocs.*, 128 Ariz. 47, 623 P.2d 836 (App.1980). Although Arizona ordinarily follows the above rule, courts must also look at the contract itself or at the all-encompassing language of the indemnification clause in order to find an intent to indemnify the indemnitee for his own negligence. *Washington Elementary School Dist. v. Baglino Corp.*, 169 Ariz. 58, 817 P.2d 3 (1991). We find nothing in the language of Article IX that can be interpreted to require Corn to indemnify the State against the State's own negligence, as McGillicuddy maintains. McGillicuddy suggests that the phrase "or on account of or in consequence of any neglect in safeguarding the work" in Article IX conveys the intent that Corn indemnify the State even for the State's own negligence. We disagree. We find that phrase simply refers to one of a series of consequences in the article attributable to "said contractor" for which the contractor would be responsible for indemnifying the State. It does not obligate Corn to indemnify the State for the State's own negligence in safeguarding the work. Consequently, we find that Corn was only obligated to indemnify the State against any liability incurred through Corn's own negligence and that the State remained liable to plaintiffs for any injuries plaintiffs incurred through the State's own negligent wrongdoing.

 Furthermore, the fact that Corn had a duty under the contract to defend the State does not signify that Corn also had a contractual duty to indemnify the State for the State's negligent conduct. McGillicuddy argues that the fact that Corn's attorneys represented the State, a potentially adversarial defendant, before the trial court signifies that Corn or Corn's insurance company agreed to indemnify the State against the State's own negligence. We disagree. The duty to defend is distinguishable from the duty to indemnify. While the duty to defend generally exists regardless of whether the insured is ultimately found liable, the duty to indemnify depends on whether the indemnitee en-

gaged in actual, active wrongdoing. *INA Ins. Co. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 255, 722 P.2d 975, 982 (App.1986). The fact that Corn or Corn's insurer also represented the State in the action below does not establish that Corn was bound to indemnify the State against its negligent responsibility in causing plaintiffs' injuries. Consequently we hold that the State was not relieved of its legal liability to plaintiffs under the terms of its contract with Corn.

■ Next we address McGillicuddy's argument that the State was relieved of its liability to plaintiffs because of the covenant not to execute contained in the settlement agreement. McGillicuddy contends that, in enacting A.R.S. section 12–821, the legislature was concerned only with indemnifying the State when it has a "potential [legal] obligation to pay" monies from State coffers but that, in this case, the State's "insulation from such potential liability and obligation meant that it had nothing to assign." McGillicuddy argues that, since, as part of their settlement agreement, plaintiffs in this case have agreed not to execute on their judgment against the State, the State's net outlay from its coffers as a result of this accident will be zero. Thus, McGillicuddy concludes, Arizona never having had any legal obligation to pay State monies under the agreement, had no indemnity rights to assign under the statute, and the trial court erred in denying summary judgment. We disagree.

■ In A.R.S. section 12–821 the legislature gives the State the right of indemnity against a claimant's attorney who is not "excusably negligent" for "any liability assessed in the action." The statute does not require that actual payment be effectuated in order for the State to have the right of indemnity against an attorney; it simply requires that "liability be assessed" against the State in order for the State to be eligible for indemnification from a claimant's attorney. This court has previously held that "[i]ndemnification against liability applies once liability for a cause of action is established," and that "the indemnitee is not required to make actual payment." *INA Ins. Co.*, 150 Ariz.

at 253, 722 P.2d at 980; *see also Skousen v. W.C. Olsen Inv. Co.*, 149 Ariz. 251, 717 P.2d 930 (App.1986). This is in keeping with the general rule that agreements to indemnify against liability do not require proof of actual payment while agreements to indemnify against loss or damage do. *See* 42 C.J.S. *Indemnity*, sections 22(a) and 23(a) (1991) and cases thereunder. Where indemnity is against liability, a cause of action accrues when judgement is entered by the court, even though no payment may be made. *See INA*, 150 Ariz. at 253, 722 P.2d at 980.

We find that, in this case, the State's liability was established as a matter of law when the parties' settlement agreement was entered into judgment by the court below. This result is supported by our supreme court's decision in an analogous case, *United Services Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987), involving a tort action that was settled when the insureds under a homeowner's policy stipulated to a judgment to be collected solely from the insurer in return for a covenant not to execute against the insureds. In *Morris*, our supreme court held that findings of liability or of damages owed settled under such *Damron*-type settlement agreements are binding on an insurer/indemnitor, as long as they are made "fairly, with notice to the insurer, and without fraud or collusion...." *Morris*, 154 Ariz. at 119, 741 P.2d at 252. As long as the settlement agreement that is entered into by the parties is "reasonable and prudent under all the circumstances," an insurer/indemnitor is precluded from relitigating the issue of liability or the amount of damages assessed. 154 Ariz. at 120, 741 P.2d at 253. Here, McGillicuddy does not allege that the settlement agreement entered into by the parties in this case is "unreasonable" or the result of fraud or collusion by the parties against him. McGillicuddy merely argues that the covenant not to execute against the State contained in the settlement agreement relieved the State of all liability for plaintiff's injuries and thus did not give rise to a transferable cause of action against him for indemnity. We hold that McGillicuddy is preclud-

ed under *Morris* from relitigating the issue of liability and that the trial court did not err in granting summary judgment on the issue. We thus affirm the trial court's denial of summary judgment on the issue of plaintiffs' entitlement to indemnity.

Reversed on appeal; remanded; affirmed on cross-appeal.

LANKFORD and TOCI, JJ., concur.