36 P.3d 1200

Peter STROJNIK and Tanya C. Strojnik, husband and wife, Plaintiffs–Appellants,

v.

GENERAL INSURANCE COMPANY OF AMERICA, a foreign insurer; and Safeco Corporation, Defendants–Appellees.

No. 1–CA–CV–00–0209.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 18, 2001.

William J. Downey, P.C., by William J. Downey, Phoenix, Attorneys for Plaintiffs–Appellants.

Browder & Kenney, P.C., by Robert W. Browder, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

TIMMER, Judge.

¶ 1 In a prior lawsuit, Peter and Tanya Strojnik sued the law firm of Diouguardi, Poli and Ball (the "Poli Firm") for malicious prosecution. The Poli Firm's insurer, General Insurance Company of America ("GICA"), contested coverage and therefore defended the firm under a reservation of rights. After the Strojniks and the Poli Firm negotiated the terms of a *Morris* agreement,[1] GICA and the firm resolved the coverage dispute, and, as a result, the Poli Firm refused to enter the *Morris* agreement.

¶ 2 The Strojniks then sued GICA for intentional interference with their prospective contract with the Poli Firm. The trial court denied the Strojniks' motion for partial summary judgment, entered summary judgment in favor of GICA, and the Strojniks appealed. We must decide whether the court correctly ruled that, as a matter of law, GICA did not improperly interfere with the Strojniks' prospective contract with the Poli Firm by inducing the firm to forego execution of the *Morris* agreement. For the reasons that follow, we decide that GICA did not improperly interfere with the Strojniks' prospective agreement with the Poli Firm and therefore affirm.

1. *See United Services Auto. Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987).

## FACTUAL AND PROCEDURAL HISTORY

¶ 3 In 1990, the Poli Firm, on behalf of a client, sued the Strojniks for fraud, racketeering, and other charges. The trial court ultimately dismissed that complaint, and the Strojniks then filed a malicious prosecution action against the Poli Firm, seeking $2.5 million in damages.

¶ 4 The Poli Firm informed GICA, its legal malpractice carrier, of the Strojniks' claim. After evaluating the Strojniks' complaint, GICA notified the Poli Firm that although GICA would defend the firm against the claim, GICA reserved its rights to contest coverage in a later proceeding. GICA based its reservation of rights on the fact that the alleged tortious acts might constitute either a "knowingly wrongful act" or a reasonably foreseeable pre-existing claim, as defined in (and excluded from coverage by) the firm's insurance policy.

¶ 5 After learning of GICA's position on coverage, the Poli Firm commenced negotiations with the Strojniks to enter a *Morris* agreement. Under such an agreement, an insured being defended under a reservation of rights can properly enter a settlement agreement with the aggrieved party and stipulate to a judgment without breaching the cooperation clause contained in the insurance contract. *Morris*, 154 Ariz. at 119, 741 P.2d at 252. Such agreements are proper only if created fairly, with notice to the insurer, and without fraud or collusion on the insurer. *Id.* Assuming the insurer eventually loses the coverage contest, the plaintiff can collect its judgment against the insurer if the plaintiff proves that the judgment was not fraudulent or collusive and was fair and reasonable under the circumstances. *Id.* at 121, 741 P.2d at 254.

¶ 6 The Poli Firm and the Strojniks ultimately negotiated a *Morris* agreement, under which the firm would (1) stipulate to the entry of a judgment against it in the amount of $2.5 million, and (2) assign to the Strojniks its right to pursue any claims against GICA for failing to discharge its duties under the insurance contract. In return, the Strojniks would agree to refrain from executing its judgment against the Poli Firm.

¶ 7 As required by *Morris*, the Poli Firm notified GICA of the impending agreement and stated that unless GICA unconditionally withdrew its reservation of rights, the firm would enter the *Morris* agreement. The firm conveyed that it preferred not to enter the agreement but would be compelled to do so if GICA did not change its position. After receiving the Poli Firm's notification, GICA sent a representative to meet with the firm in an attempt to dissuade it from entering the *Morris* agreement. GICA was successful. After meeting with its insured, GICA and the Poli Firm entered a "Defense and Indemnification Agreement" (the "D & I"), consisting of the following, pertinent terms: (1) the Poli Firm agreed that no coverage existed under the GICA policy for the Strojniks' claim, (2) GICA agreed to continue defending the firm from the Strojniks' claim and to provide a limited amount of indemnity, with a maximum payment of $450,000.00, if the Strojniks prevailed or the parties settled the claim, and (3) the Poli Firm agreed not to enter any settlement agreement with the Strojniks without GICA's consent. As a result of the D & I, the Poli Firm did not enter the *Morris* agreement with the Strojniks.

¶ 8 The Strojniks then sued GICA for intentionally interfering with their prospective contractual relationship with the Poli Firm. In order to have prevailed on its intentional interference claim against GICA, the Strojniks needed to establish the following elements: (1) the existence of the prospective *Morris* agreement, (2) GICA's knowledge of the prospective agreement, (3) intentional acts by GICA that caused the Poli Firm to refrain from entering the *Morris* agreement, (4) the impropriety of GICA's interference, and (5) resulting damage to the Strojniks. *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 62, ¶ 54, 985 P.2d 535, 547 (App.1998); *Edwards v. Anaconda Co.*, 115 Ariz. 313, 315, 565 P.2d 190, 192 (App.1977).

¶ 9 The Strojniks unsuccessfully moved for partial summary judgment on whether GICA's alleged interference was "improper" as a matter of law. GICA then moved for summary judgment based on its contention

that any interference was not legally "improper." The trial court granted this motion, ruling that GICA's actions were a good faith attempt to safeguard a legally protected interest, did not violate the law, and were therefore not improper. This appeal followed.[2]

## STANDARD OF REVIEW

■ ¶ 10 We review *de novo* the trial court's grant of summary judgment, viewing the evidence in the light most favorable to the Strojniks as the non-prevailing parties. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.,* 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997). The court properly entered summary judgment for GICA if no genuine issues of material fact existed and it was entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *Orme School v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

■ ¶ 11 The Strojniks also appeal from the court's denial of their motion for partial summary judgment. As GICA correctly notes, such orders are not ordinarily reviewed on appeal, even after entry of a final judgment. *Bothell v. Two Point Acres, Inc.,* 192 Ariz. 313, 316, ¶ 7, 965 P.2d 47, 50 (App. 1998). However, we may review the ruling when, as in this case, the court denied the motion on a point of law. *Hauskins v. McGillicuddy,* 175 Ariz. 42, 49, 852 P.2d 1226, 1233 (App.1992). We are additionally persuaded to review the denial of the Strojniks' motion because the issue presented in that motion was identical to the one tendered in GICA's successful motion. Because the court denied the Strojniks' motion based on its interpretation of statutory and common law, we review the ruling *de novo. San Carlos Apache Tribe v. Superior Court,* 193 Ariz. 195, 203, ¶ 9, 972 P.2d 179, 187 (1999).

## DISCUSSION

**I. Restatement (Second) of Torts § 773: Did GICA assert a "legally protected interest"?**

■ ¶ 12 The Strojniks first argue that the trial court erred by relying on Restatement (Second) of Torts ("Restatement") § 773 (1979) in concluding that GICA did not improperly interfere[3] with the proposed *Morris* agreement. Section 773, followed by Arizona courts, provides as follows:

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

*Snow v. W. Sav. & Loan Ass'n,* 152 Ariz. 27, 35, 730 P.2d 204, 212 (1986) (quoting Restatement § 773). The trial court, relying on § 773, ruled that the Strojniks had failed to demonstrate that GICA's intervention "to protect [its] own business interests" was improper as to means or objective, and GICA was therefore entitled to summary judgment.

¶ 13 The Strojniks argue that the trial court misapplied Restatement § 773 because GICA did not, in fact, possess a "legally protected interest" at the time it entered the D & I that would have been impaired by execution of the *Morris* agreement. Rather, the Strojniks contend, GICA merely possessed an economic interest in preventing the Poli Firm from entering the agreement. GICA counters that its "economic/business interests" emanating from the insurance poli-

---

2. Because the summary judgment did not resolve other claims asserted by the Strojniks, the case proceeded to trial on those claims, and a jury eventually returned a verdict in favor of the defendants. The Strojniks do not appeal from the portion of the judgment entered on the claims that were tried before the court. Nor do the Strojniks contest the portion of the judgment entered in favor of defendant Safeco Corporation.

3. We, like the trial court, assume that GICA actually interfered with the prospective *Morris* agreement. Consequently, we consider only the propriety of the interference and do not address the parties' arguments regarding the fact of interference.

cy issued to the Poli Firm were "legally protected" within the meaning of § 773, and GICA was thus entitled to interfere with execution of the *Morris* agreement pursuant to this provision.

■ ¶ 14 An interest is "legally protected" within the meaning of Restatement § 773 if society recognizes the interest as so legitimate that everyone is under a duty not to invade it by interfering with its realization, and those who do so would be civilly liable to the possessor. Restatement § 1, cmt. d. An interest created by a valid, existing contract indisputably falls within this definition. *Wyatt v. Ruck Const., Inc.*, 117 Ariz. 186, 190, 571 P.2d 683, 687 (App.1977) ("If a defendant has a present, existing interest to protect such as ... a prior contract of his own, he is privileged to prevent the performance of a contract of another which threatens it."). Thus, we agree with GICA that if its interests under the policy would have been invaded by execution of the *Morris* agreement, these interests were "legally protected" within the meaning of Restatement § 773. We now turn to that issue.

■ ¶ 15 Prior to GICA's reservation of rights, the Poli Firm could not have settled the malicious prosecution lawsuit with the Strojniks without breaching the cooperation clause of the insurance policy issued by GICA. *Morris*, 154 Ariz. at 117–18, 741 P.2d at 250–51. Consequently, GICA originally possessed a "legally protected interest" arising from its policy that would have been invaded by any unauthorized settlement agreement between the Poli Firm and the Strojniks. But once GICA reserved its rights to later contest coverage, the Poli Firm was no longer obligated to refrain from settling the dispute without GICA's permission, and the firm assumed control of its defense. *Id.* at 119, 741 P.2d at 252. Phrased differently, at the time GICA entered the D & I, it no longer had a right under its policy to control the defense or any

settlement between the Poli Firm and the Strojniks. Moreover, GICA was protected from excessive exposure to loss under its policy by *Morris'* requirement that the judgment be fair and reasonable. Accordingly, the proposed *Morris* agreement would not have invaded any contractual interest possessed by GICA. We therefore decide that even though GICA had an economic interest in preventing execution of the proposed *Morris* agreement, that interest was not "legally protected" within the meaning of Restatement § 773, and the trial court thus erred in applying that provision. In light of our conclusion, we do not address the Strojniks' additional arguments regarding the applicability of § 773.

## II. Restatement (Second) of Torts § 767: Were GICA's actions proper as a matter of law?

¶ 16 Although the trial court incorrectly based its ruling on Restatement § 773, we will affirm if GICA was entitled to summary judgment for different reasons. *Grant v. Ariz. Bd. of Regents*, 133 Ariz. 527, 528, 652 P.2d 1374, 1375 (1982).

¶ 17 The supreme court in *Wagenseller v. Scottsdale Memorial Hospital* concluded that a defendant would not ordinarily be liable for tortious interference with a business expectancy absent a showing that the defendant's actions were improper as to means or motive. 147 Ariz. 370, 388, 710 P.2d 1025, 1043. The court then held that courts should examine the factors set forth in Restatement § 767 in deciding whether a plaintiff has met his burden of proving improper interference. *Id.*[4] The trial court ruled that, even assuming the applicability of § 767, it was not clear that GICA's conduct "ran afoul" of any factor. The Strojniks argue that the trial court erred because GICA acted with improper means and motive in interfering with the proposed

---

4. A court should consider the following seven factors when deciding whether a particular action is improper:

(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

Restatement § 767.

*Morris* agreement. We address means and motive separately.

### A. Improper means

#### 1. Violation of A.R.S. § 20–1123

¶ 18 The Strojniks argue that GICA employed improper means to interfere with the prospective *Morris* agreement because it violated Arizona Revised Statutes ("A.R.S.") § 20–1123 (1990) by entering the D & I. Section 20–1123 provides as follows:

No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and the insured after the occurrence of any injury, death or damage for which the insured may be liable, and any attempted annulment shall be void.

The Strojniks contend that the D & I violated § 20–1123 because GICA and the Poli Firm agreed that no coverage existed under the GICA policy for the Strojniks' claim. GICA initially counters that § 20–1123, which pertains only to policies insuring against bodily injury, death, and property damage, is inapplicable because GICA's professional liability policy excludes coverage for such claims. We need not decide the merit of GICA's contention, however, because even if § 20–1123 applies to the policy at issue, we conclude that the D & I did not "annul" the policy.

¶ 19 The Strojniks argue that the D & I violated § 20–1123 because it "annulled" the policy for purposes of the Strojniks' claim. GICA responds that the D & I did not violate § 20–1123 because it neither annulled the GICA policy nor destroyed any right by the Strojniks to collect against the policy. Our resolution of this issue depends on the legislature's intent in forbidding an insurer and its insured from "retroactively annull[ing]" their "insurance contract" in the circumstances described in § 20–1123. We initially examine the language of § 20–1123 to discern the legislature's meaning, *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993), and, if that language is clear and

unambiguous and does not lead to an absurd result, we will apply it without employing other principles of statutory construction. *Calik v. Kongable*, 195 Ariz. 496, 498, ¶ 10, 990 P.2d 1055, 1057 (1999).

¶ 20 Although the legislature has not defined an "insurance contract," it has defined "insurance" as "a contract by which one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." A.R.S. § 20–103(A). An insurance policy, therefore, is an "insurance contract." *See Sec. Ins. Co. of Hartford v. Andersen*, 158 Ariz. 426, 429, 763 P.2d 246, 249 (1988). The legislature has not, however, defined "retroactively annulled," and we therefore refer to an established and widely used dictionary to glean that term's meaning. *State v. Wise*, 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983). Webster's Collegiate Dictionary defines "retroactively," in significant part, as "[making] effective as of a date prior to enactment, promulgation, or imposition." Webster's Tenth New Collegiate Dictionary 1008 (1999). "Annul" is defined as "to make ineffective or inoperative ... to declare or make legally invalid or void." *Id.* at 47, 671 P.2d 909. Employing these definitions, we conclude that § 20–1123 prohibits an insurer and its insured, after the occurrence of any "injury, death or damage" for which the insured may be liable, from invalidating their insurance policy as of a date prior to the covered event.

¶ 21 As GICA points out, the D & I neither invalidated the Poli Firm's insurance policy in its entirety nor voided coverage for purposes of the Strojniks' claim. Instead, GICA and the Poli Firm simply resolved their coverage dispute by agreeing that GICA would provide partial indemnity to the Poli Firm in exchange for the firm's concession that the policy does not cover the Strojniks' claim. Importantly, the insurance policy remains intact, and, as GICA concedes and the trial court recognized, the D & I does not affect GICA's obligation to pay the Strojniks' claim if they succeed in obtaining a judgment against the Poli Firm and coverage under the policy is established. *See Sandoval v. Chenoweth*, 102 Ariz. 241, 245, 428 P.2d 98, 102 (1967) (recognizing that rendition of

judgment against insured creates both judgment debt in favor of injured party and debt under insurance contract between judgment debtor and insurer that can be garnished by injured party). Just as an insurer is not bound by the stipulation of an insured and a claimant that determines facts essential to establishing coverage, *Morris,* 154 Ariz. at 120, 741 P.2d at 253, a claimant is not bound by the agreement of an insurer and its insured that coverage does not exist under a policy. For these reasons, we hold that GICA and the Poli Firm did not violate § 20–1123 by entering the D & I, and, therefore, GICA did not, on this basis, employ improper means to interfere with the prospective *Morris* agreement.

### 2. Violation of common law

¶ 22 The Strojniks next argue that GICA employed improper means to interfere with the proposed *Morris* agreement because GICA and the Poli Firm violated the common law by entering the D & I. The Strojniks cite respected insurance treatises for the proposition that an insurer and its insured cannot defeat the rights of an injured party by cancelling the insurance contract or releasing the insurer from its obligations under the policy. 8B John Alan Appleman & Jean Appleman, *Insurance Law & Practice* § 5020 at 515–16 (1981) ("[I]t is the general rule that an injured person's rights cannot be defeated by a cancellation or settlement after an accident has occurred."); 7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 2d,* § 45:902 (1981) ("[I]f a cause of action has accrued to an injured person, the parties to the contract of insurance cannot by any release, agreement, or collusion destroy the right of the injured person to indemnity."). But this principle, embodied within A.R.S. § 20–1123, is not violated by the D & I. As previously explained, *see* ¶ 21, *supra,* the Strojniks' right to collect against the GICA-issued insurance policy is not impaired by the D & I. We therefore reject the Strojniks' argument.

### 3. Violation of *Morris*

¶ 23 The Strojniks next argue that GICA violated *Morris* by entering the D & I and therefore improperly interfered with the prospective agreement. They contend that once the Poli Firm notified GICA of the impending *Morris* agreement, GICA's only options under *Morris* were to either (1) withdraw its reservation of rights or (2) challenge the stipulated judgment on the basis of fraud, collusion, and/or reasonableness after coverage is established. By entering the D & I, the Strojniks assert, GICA violated both the holding and spirit of *Morris.* GICA responds that *Morris* does not prohibit an insurer and its insured from entering an agreement, such as the D & I, to resolve a coverage dispute.

¶ 24 We do not read *Morris* as restrictively as the Strojniks. The issue in *Morris* was whether an insurer may invoke the policy's cooperation clause to prevent an insured being defended under a reservation of rights from protecting itself by settling with the injured party. 154 Ariz. at 118, 741 P.2d at 251. The court held that an insured must be permitted to protect himself from the risk of noncoverage or excess judgment, and the insurer could not, therefore, invoke the cooperation clause to prevent settlement under this scenario. *Id.* at 119, 741 P.2d at 252. The court further held, however, that in order to bind the insurer to the fact or amount of liability set forth in a stipulated judgment, the insurer must be given notice of the proposed settlement and an opportunity to defend, and the settlement must be reasonable and prudent under the circumstances. *Id.* at 120, 741 P.2d at 253. The *Morris* court did not, as the Strojniks contend, limit the insurer's options in the face of a threatened settlement to either withdrawing its reservation of rights or later challenging the reasonableness of the settlement. We therefore decide that GICA did not violate the holding in *Morris* by entering the D & I.

¶ 25 The Strojniks further argue that the D & I violated the spirit of *Morris* by reestablishing GICA's control of the Poli Firm's defense of the Strojniks' lawsuit without a withdrawal of GICA's reservation of rights. The Strojniks correctly point out that the *Morris* court reasoned, in significant part, that the insurer's reservation of rights relinquishes to the insured control of his defense

in the litigation. *Id.* at 119, 741 P.2d at 252. However, we disagree that the D & I inappropriately wrested control of the defense from the Poli Firm. The threat of the *Morris* agreement spurred GICA to negotiate a compromise with the Poli Firm, which eliminated both GICA's risk that it would be bound by the proposed stipulated judgment and the firm's risk that it would be left with no coverage if the Strojniks were successful on their lawsuit. Thus, the D & I did not undercut the rationale supporting *Morris*—permitting an insured to protect itself from the risk of noncoverage.

¶ 26 In sum, we discern no reason why an insured, who, like the Poli Firm, does not wish to concede liability in a lawsuit yet is unwilling to risk noncoverage, cannot use the threat of a *Morris* agreement to negotiate a settlement of the coverage dispute that does not adversely affect the injured party's rights.[5] For these reasons, we decide that GICA did not violate the holding in *Morris* or its spirit by entering the D & I.

### 4. Violation of public policy

¶ 27 The Strojniks next argue that by entering the D & I GICA violated public policies favoring protection of injured parties, *St. Paul Fire & Marine Ins. Co. v. Asbury*, 149 Ariz. 565, 567, 720 P.2d 540, 542 (App. 1986), and settlement of disputes, *Dansby v. Buck*, 92 Ariz. 1, 11, 373 P.2d 1, 8 (1962). We disagree. As previously explained, *see* ¶ 21, *supra*, the D & I did not impair any of the Strojniks' rights to later collect against GICA's policy. In fact, the D & I provides a source of payment for any judgment obtained by the Strojniks against the Poli Firm, which does not depend on the existence of coverage under GICA's policy. Additionally, the D & I settled the coverage dispute between GICA and the Poli Firm and does not prevent the firm from settling the Strojniks' claim, albeit with GICA's approval. For these reasons, we do not discern a violation of public policy and therefore reject the Strojniks' argument.

### B. Improper motive

¶ 28 The Strojniks contend that GICA acted with an improper motive as a matter of law because its primary purpose in entering the D & I was to interfere with the prospective *Morris* agreement. As support for its argument, the Strojniks cite the commentary to Restatement § 767, which provides, in relevant part, that if the actor's primary or secondary motive is to interfere with another's contractual relations, this factor may carry substantial weight in balancing the factors listed in § 767. Restatement § 767, cmt. d, p. 32.[6] The Strojniks confuse motive with objective. Reading the cited commentary in context reveals that the improper "motive to interfere" refers to a "motive to injure another or to vent one's ill will on him." *Id.* Here, although GICA's objective was to prevent execution of the *Morris* agreement, its motive was to protect its own economic interests rather than to inflict injury on the Strojniks. *See* Restatement § 769 ("One who, having a financial interest in the business of a third person intentionally causes that person not to enter a prospective contractual relation with another, does not interfere improperly with the other's relation if he (a) does not employ wrongful means and (b) acts to protect his interest from being prejudiced by the relation."). For this reason, we reject the Strojniks' contention.

¶ 29 The Strojniks alternatively argue that the propriety of GICA's motive was a question of fact that should have defeated its summary judgment motion. We reject this argument because the Strojniks raise it for the first time on appeal. *Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 505–06, ¶ 13, 990 P.2d 1061, 1064–65 (App.1999)(arguments not made at the trial level cannot be asserted for the first time on appeal). Moreover, we do not discern a question of fact regarding GICA's motive for interfering with the prospective *Morris* agreement.

### CONCLUSION

¶ 30 For the foregoing reasons, we hold that GICA did not, as a matter of law, im-

---

5. Of course, an insurer cannot, in bad faith, deny coverage to its insured in order to negotiate a settlement of a "coverage dispute." Such conduct would constitute an "improper" action.

The record does not reveal the existence of any bad faith in this case.

6. *See* ¶ 17, n. 4, *supra.*

properly interfere with the prospective *Morris* agreement by entering an agreement with the Poli Firm, which resolved a coverage dispute. Accordingly, we affirm.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and SUSAN A. EHRLICH, Judge.